UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**'09 CIV 1989**

JUDGE CROTTY

---------------------------------------------------------------- x

MARSHALL FREIDUS, on Behalf of Himself :
and All Others Similarly Situated,

                          Plaintiff,

       vs.

BARCLAYS BANK PLC, BARCLAYS PLC,
MATTHEW WILLIAM BARRETT, JOHN
SILVESTER VARLEY, NAGUIB KHERAJ,
ROBERT EDWARD DIAMOND, JR., SIR
RICHARD BROADBENT, RICHARD LEIGH
CLIFFORD, DAME SANDRA J.N.
DAWSON, SIR ANDREW LIKIERMAN, SIR
NIGEL RUDD, STEPHEN GEORGE
RUSSELL, JOHN MICHAEL
SUNDERLAND, BARCLAYS CAPITAL
SECURITIES LIMITED, CITIGROUP
GLOBAL MARKETS INC., MERRILL
LYNCH, PIERCE, FENNER & SMITH
INCORPORATED, WACHOVIA CAPITAL
MARKETS, LLC, MORGAN STANLEY &
CO. INCORPORATED, UBS SECURITIES
LLC, A.G. EDWARDS & SONS, INC., BNP
PARIBAS SECURITIES CORP., GOLDMAN,
SACHS & CO., KEYBANC CAPITAL
MARKETS, RBC DAIN RAUSCHER INC.,
SUNTRUST CAPITAL MARKETS, INC. and
WELLS FARGO SECURITIES LLC,

                        Defendants.

---------------------------------------------------------------- x

Civil Action No.

CLASS ACTION

COMPLAINT FOR VIOLATION OF THE
FEDERAL SECURITIES LAWS

FILED
U.S. DISTRICT COURT
2009 MAR -4 PM 2:39

DEMAND FOR JURY TRIAL

## NATURE OF THE ACTION

1.      This is a securities class action on behalf of all persons who acquired the American Depositary Shares, Series 2 ("Preferred Stock") of Barclays Bank Plc ("Barclays Bank" or the "Company") pursuant and/or traceable to a false and misleading registration statement and prospectus (collectively, the "Registration Statement") issued in connection with the Company's April 2006 offering of the Company's Preferred Stock representing 6.625% Dollar-Denominated Non-Cumulative Callable Preference Shares, Series 2 (the "Offering"). This action asserts strict liability claims under the Securities Act of 1933 ("1933 Act") against Barclays Bank, its senior insiders, Barclays Plc ("Barclays") and the investment banks which underwrote the April 2006 Offering (collectively, "defendants").

2.      Barclays Bank is a major global financial services provider engaged in retail and commercial banking, credit cards, investment banking, wealth management and investment management services. Barclays Bank's United States operations are headquartered in New York, New York and it has offices around the globe.

3.      Defendants consummated the Offering pursuant to a false and misleading Registration Statement and Prospectus (collectively, the "Registration Statement"), selling 30 million shares at $25 per share (which included an over-allotment option to underwriters to purchase up to an additional 4 million shares of the Preferred Stock), for proceeds of over $750 million.

4.      Barclays Bank ultimately announced huge multi-billion dollar impairment charges associated with its exposure to mortgage-related securities, causing the price of Barclays Bank's Preferred Stock issued in the Offering to decline.

5.      The true facts which were omitted from the Registration Statement were:

(a)     Barclays' portfolio of mortgage-related securities was impaired to a much larger extent than had been disclosed;

(b)     Defendants failed to properly record losses for impaired assets;

(c)     Barclays' internal controls were inadequate to prevent the Company from improperly reporting its mortgage-related investments; and

(d)     Barclays was not as well capitalized as represented and would have to continually raise additional capital, which would dilute current holders and those investors purchasing Preferred Stock in the Offering.

## JURISDICTION AND VENUE

6.      The claims asserted herein arise under and pursuant to §§11, 12(a)(2) and 15 of the 1933 Act [15 U.S.C. §§77k, 77l(a)(2) and 77o].

7.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and §22 of the Securities Act.

8.      Venue is proper in this District pursuant to 28 U.S.C. §1391(b), because, Barclays Bank's United States operations are headquartered this District, the underwriter defendants conduct business in this District and many of the acts and practices complained of herein occurred in substantial part in this District.

## PARTIES

9.      Plaintiff Marshall Freidus acquired the Preferred Stock of Barclays Bank pursuant and/or traceable to the Offering and has been damaged thereby.

10.     Defendant Barclays Bank is a major global financial services provider operating in Europe, North America, the Middle East, Latin America, Australia, Asia and Africa.  Barclays Bank's United States operations are headquartered in New York, New York.

- 2 -

11.     Defendant Barclays Plc ("Barclays") is a holding company that is listed in London, New York and Tokyo and operates through its subsidiary Barclays Bank and acts as the ultimate holding company.  Barclays is located in London, England, United Kingdom.

12.     Defendant Matthew William Barrett ("Barrett") was Chairman of the Board of Barclays Bank and Barclays until he resigned from the Company on January 1, 2007.  Barrett signed the false and misleading Registration Statement.

13.     Defendant John Silvester Varley ("Varley") is, and at all relevant times was, Chief Executive Officer ("CEO") and a director of Barclays Bank and Barclays.  Varley signed the false and misleading Registration Statement.

14.     Defendant Naguib Kheraj ("Kheraj") was Principal Financial Officer and a director of Barclays Bank and Barclays until he resigned from the Company on March 31, 2007.  Defendant Kheraj signed the false and misleading Registration Statement.

15.     Defendant Robert Edward Diamond, Jr.("Diamond") is, and at all relevant times was, a director and President of Barclays Bank and Barclays.  Diamond signed the false and misleading Registration Statement.

16.     Defendant Sir Richard Broadbent ("Broadbent") is, and at all relevant times was, a director of Barclays Bank and Barclays.  Defendant Broadbent signed the  false and misleading Registration Statement.

17.     Defendant Richard Leigh Clifford ("Clifford") is, and at all relevant times was, a director of Barclays Bank and Barclays.  Defendant Clifford signed the false and misleading Registration Statement.

18.     Defendant Dame Sandra J.N. Dawson ("Dawson") is, and at all relevant times was, a director of Barclays Bank and Barclays.  Defendant Dawson signed the false and misleading Registration Statement.

19.     Defendant Sir Andrew Likierman ("Likierman") is, and at all relevant times was, a director of Barclays Bank and Barclays.  Defendant Likierman signed the false and misleading Registration Statement.

20.     Defendant Sir Nigel Rudd ("Rudd") is, and at all relevant times was, a director of Barclays Bank and Barclays.  Defendant Rudd signed the false and misleading Registration Statement.

21.     Defendant Stephen George Russell ("Russell") is, and at all relevant times was, a director and Secretary of Barclays Bank and Barclays.  Defendant Russell signed the false and misleading Registration Statement.

22.     Defendant John Michael Sunderland ("Sunderland") is, and at all relevant times was, a director of Barclays Bank and Barclays.  Defendant Sunderland signed the false and misleading Registration Statement.

23.     The defendants referenced above in ¶¶12-22 are referred to herein as the "Individual Defendants."

24.     Defendant Barclays Capital Securities Limited ("Barclays Securities") is the investment banking division of Barclays Capital.  Barclays Securities was an underwriter of the Offering.

25.     Defendant Citigroup Global Markets Inc. ("Citigroup") is a large integrated financial services institution that through subsidiaries and divisions provides commercial and investment

banking services, commercial loans to corporate entities, and acts as underwriter in the sale of corporate securities. Citigroup was an underwriter of the Offering.

26.     Defendant Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill Lynch") provides capital markets services, investment banking and advisory services, wealth management, asset management, insurance, banking and related products and services on a global basis. Merrill Lynch was an underwriter of the Offering

27.     Defendant Wachovia Capital Markets, LLC ("Wachovia Capital") is the corporate and investment banking side of brokerage firm Wachovia Securities (both companies are subsidiaries of banking giant Wachovia). Wachovia Capital provides financial and corporate advisory services, private capital, debt private placement, mergers and acquisitions advice, underwriting, and equity investing. It also offers real estate financing, risk management services, and structured products such as asset-backed and mortgage-backed securities. Wachovia Capital was an underwriter of the Offering.

28.     Defendant Morgan Stanley & Co. Incorporated ("Morgan Stanley") is a global financial services firm that, through its subsidiaries and affiliates, provides its products and services to customers, including corporations, governments, financial institutions and individuals. Morgan Stanley assists public and private corporations in raising funds in the capital markets (both equity and debt), as well as in providing strategic advisory services for mergers, acquisitions and other types of financial transactions. Morgan Stanley was an underwriter of the Offering.

29.     Defendant UBS Securities LLC ("UBS") is the U.S. investment banking and securities arm of UBS Investment Bank. UBS Investment Bank provides a range of financial products and services worldwide. UBS was an underwriter of the Offering.

30.     Defendant A.G. Edwards & Sons, Inc. ("A.G. Edwards") provided securities and commodities brokerage, investment banking, trust services, asset management, financial and retirement planning, private client services, investment management, and other related financial services to individual, governmental, and institutional clients. A.G. Edwards was an underwriter of the Offering.

31.     Defendant BNP Paribas Securities Corp. ("BNP") is the largest bank in Europe and is active in the finance, investment and asset management markets.  BNP was an underwriter of the Offering.

32.     Defendant Goldman, Sachs & Co. ("Goldman Sachs") is a leading global investment banking, securities and investment management firm that provides a wide range of services worldwide to a substantial and diversified client base that includes corporations, financial institutions, governments and high-net-worth individuals.  Goldman Sachs was an underwriter of the Offering.

33.     Defendant KeyBanc Capital Markets ("KeyBanc") is a boutique investment bank that provides financial advisory services.   KeyBanc offers mergers and acquisitions advisory, divestitures, initial public offering, capital restructuring, equity and debt financing, and corporate loan syndication consulting services and provides securities underwriting, interest rate risk management, equity research and treasury management solutions.  Additionally, KeyBanc offers brokerage, equity trading, and investment advisory services.  KeyBanc was an underwriter of the Offering.

34.     Defendant RBC Dain Rauscher Inc. ("RBC") was the corporate and investment banking division of Royal Bank of Canada (the "Bank").  In March 2008, RBC Dain Rauscher Inc. changed its name to RBC Wealth Management ("RBC Wealth").  RBC Wealth is a division of RBC

Capital Markets Corporation, which is a wholly-owned subsidiary of the Bank. RBC was an underwriter of the Offering.

35.    Defendant SunTrust Capital Markets, Inc. ("SunTrust") is a full-service investment bank that specializes in emerging growth companies in selected industries. SunTrust was an underwriter of the Offering.

36.    Defendant Wells Fargo Securities LLC ("Wells Fargo") provides investment banking services in the United States. Wells Fargo offers capital markets access through public offerings, private placements, and debt offerings, which include new issue underwriting of high yield bonds and private placements, as well as market making, research, and equity trading. Wells Fargo also provides advisory services for mergers and acquisitions. Wells Fargo was an underwriter of the Offering.

37.    Pursuant to the 1933 Act, the defendants referenced in ¶¶24-36 above are referred to herein as the "Underwriter Defendants."

38.    The Underwriter Defendants are *liable* for the false and misleading statements in the Registration Statement. In connection with the Offering, the Underwriter Defendants drafted and disseminated the Registration Statement and were paid fees in connection therewith. The Underwriter Defendants' failure to conduct an adequate due diligence investigation was a substantial factor leading to the harm complained of herein.

## CLASS ACTION ALLEGATIONS

39.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons or entities who acquired shares of Barclays Bank Preferred Stock pursuant or traceable to the Company's false and misleading Registration Statement for the Offering and who were damaged thereby (the "Class"). Excluded from the Class are defendants, the officers and directors of the Company, at all relevant

times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

40.     The members of the Class are so numerous that joinder of all members is impracticable. Barclays Bank perpetual Preferred Stock was actively traded on the NYSE. While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are hundreds of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Barclays Bank or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

41.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

42.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

43.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)     whether the 1933 Act was violated by defendants' acts as alleged herein;

(b)     whether statements made by defendants to the investing public in the Registration Statement misrepresented material facts about the business, operations and management of Barclays Bank; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

44.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## BACKGROUND

45.     Barclays is a major global financial services provider engaged in retail and commercial banking, credit cards, investment banking, wealth management and investment management services, with an extensive international presence in Europe, the USA, Africa and Asia. Barclays is the parent of Barclays Bank, which is a major global financial services provider engaged in retail and commercial banking, credit cards, investment banking, wealth management and investment management services. It is one of the largest financial services companies in the world by market capitalization. Barclays Capital is a subsidiary of Barclays.

### THE FALSE AND DEFECTIVE REGISTRATION STATEMENT AND PROSPECTUS

46.     On or about September 14, 2005, Barclays Bank filed with the SEC a Form F-3/A Registration Statement for the Preferred Stock. The Registration Statement incorporated certain SEC filings:

INCORPORATION OF CERTAIN DOCUMENTS BY REFERENCE

The SEC allows us to "incorporate by reference" the information we file with them, which means we can disclose important information to you by referring you to those documents. The most recent information that we file with the Securities and Exchange Commission automatically updates and supersedes earlier information.

We filed our annual report on Form 20-F for the fiscal year ended December 31, 2004 (the "2004 Form 20-F") with the SEC on March 24, 2005 and an amendment thereto on May 6, 2005. We have also filed extracts from a results announcement by Barclays PLC for the six months ended June 30, 2005 under cover of Form 6-K with the SEC on August 12, 2005. We are incorporating the 2004 Form

20-F, as amended, and the Form 6-K dated August 12, 2005 by reference into this prospectus.

In addition, we will incorporate by reference into this prospectus all documents that we file with the SEC under Section 13(a), 13(c), 14 or 15(d) of the Securities Exchange Act of 1934 (the "Exchange Act") and, to the extent, if any, we designate therein, reports on Form 6-K we furnish to the SEC after the date of this prospectus and prior to the termination of any offering contemplated in this prospectus.

47.     The Form F-3 also incorporated by reference subsequently filed prospectuses:

That, for the purpose of determining any liability under the Securities Act of 1933, each such post-effective amendment shall be deemed to be a new registration statement relating to the securities offered therein, and the offering of such securities at that time shall be deemed to be the initial *bona fide* offering thereof.

48.     The Form F-3 also included assurances that the Registrant would undertake

[t]o reflect in the document any facts or events arising after the effective date of the registration statement (or the most recent post-effective amendment thereof) which, individually or in the aggregate, represent a fundamental change in the information set forth in the registration statement . . . .

49.     On or about April 21 2006, Barclays Bank filed its Form 424B2 for the Offering, which forms part of the Registration Statement and which became effective on April 20, 2006, selling 30 million shares at $25 per share (which included a 15-day option to underwriters to purchase up to an additional 4 million shares of Preferred Stock to cover over-allotments), for proceeds of over $750 million.   The Prospectus incorporated by reference Barclays Bank's previously filed Forms 20-F and 6-K.

50.     The Prospectus omitted important information about Barclays Bank's exposure to the credit and real estate markets and how the changes in the markets were affecting Barclays Bank by the time of the Offering, including omitting information about how this exposure could affect the Company's capital base.

51.     The Registration Statement/Prospectus contained untrue statements of material fact or omitted to state other facts necessary to make the statements made therein not misleading and was not prepared in accordance with applicable SEC rules and regulations.

52.     The statements above were false and/or misleading because the dislocation in the financial markets was then having an increasingly severe impact on Barclays Bank's business which significantly increased the risk level of the Preferred Stock.

53.     Following the Offering, the Preferred Stock traded at between $23 and $25 per share.

54.     Beginning in late May 2008, Barclays Bank's Preferred Stock declined in tandem with securities of other financial institutions as the ongoing credit crunch increased investors' concerns of the poor underlying fundamentals of the financial sector's mortgage risk management.

55.     On August 7, 2008, Barclays announced that its first-half net income declined 34% to £4.72 billion ($3.4 billion).  The net income reduction was due in large part by write-downs of £2.8 billion of credit-related assets, more than analysts predicted.  Analysts commented on the size of the write-downs:

> "Maybe this is grist to the mill for those who said that Barclays was under providing for its writedowns," said Simon Maughan, a London-based analyst at MF Global Securities Ltd. who has "buy" rating on the stock.  "They have written off significantly more than they flagged in June . . . ."

56.     Notwithstanding these huge write-downs, Barclays' securities, including the Preferred Stock, did not decline appreciably due to Barclays' assurances it did not require additional capital.  Barclays represented it did not need additional capital after raising £4.5 billion in a share sale to investors and sovereign wealth funds in July.

57.     On October 13, 2008, Barclays issued a press release entitled "Update on capital, dividend and current trading," which stated in part:

> Following the announcement made by the UK Government on 8 October 2008 in relation to UK banking sector capital and funding, Barclays has been in

- 11 -

detailed discussions with the UK Financial Services Authority ("FSA") and HM Treasury.

**Capital and dividend**

*Barclays is well capitalised*, profitable and has access to the liquidity required to support its business. Taking into account the new higher capital targets which the FSA has set for all UK banks, the Board has determined that it will raise in excess of £6.5bn of Tier 1 Capital. This would result in a pro forma Tier 1 Capital ratio as at 30 June 2008 of over 11%.

Given the strength of Barclays well diversified business and the existing capital base, the Board expects that the additional capital will be raised from investors without calling on the Government funding which has been offered to UK Banks. Accordingly, a plan has been agreed with and approved by the FSA which envisages:

- The issue of preference shares to raise c£3bn by 31 December 2008 as Barclays contribution to the commitment made by UK banks to increase Tier 1 capital by £25 billion in aggregate by year-end.

- The issue of new ordinary shares to raise £0.6bn ($1bn) as announced on 17 September as part of our announcement concerning the acquisition of Lehman Brothers North American investment banking and capital markets businesses ('the Lehman Acquisition').

- The issue of new ordinary shares to raise a further c£3bn as soon as practicable after the announcement of our full year 2008 results and our intention is that this should be before 31 March 2009. The offer of such shares will be structured so as to give existing shareholders full rights of participation.

- Balance sheet management and operational efficiencies to release at least a further £1.5bn in equity resources.

As part of the above issuance of shares, Barclays has agreement in principle with an existing shareholder to contribute £1bn in new capital, to be allocated between the component parts listed above.

In the light of the new capital ratios agreed with the FSA and in recognition of the need to maximise capital resources in the current economic climate, the Board of Barclays has concluded that it would not be appropriate to recommend the payment of a final dividend for 2008. This dividend, amounting to c£2bn, would otherwise have been payable in April 2009. Our intention is to resume dividend payments in the second half of 2009.

The effect of the above is that more than £6.5bn is raised through capital issuance and at least a further £3.5bn through dividend and other actions.

In the event that any of the proposed capital issuances do not proceed, Barclays, along with the other UK banks, would be eligible to have access to the capital facilities announced by the UK Government on 8 October 2008. The terms of such facilities would be negotiated at the time and may be on terms less favourable than those made available today. The UK Government has also confirmed that Barclays is eligible to use the extended facilities with the Bank of England and the UK Government guarantee of term unsecured issuance which have been made available to UK Banks.

**Current trading**

We will provide our usual Interim Management Statement on 18 November 2008. When we announced the Lehman Acquisition on 17 September 2008, we commented that Barclays had traded satisfactorily during the months of July and August. In the month of September, profit before tax very significantly exceeded the monthly run rate for the first half of the year, with strong contributions from Global Retail and Commercial Banking and from Investment Banking and Investment Management, and strong inflows of new customers and customer deposits.

58.     In mid-November 2008, Barclays acknowledged it needed to raise capital. It quickly became apparent that Barclays might not be able to persuade investors to approve a £7 billion ($10.48 billion) plan to raise cash by the November 24 deadline.

59.     On this news, the Preferred Stock dropped to as low as $8.30 per share on November 20, 2008. These fears were confirmed on November 25, 2008, when *TimesOnline* issued an article entitled "Investor fury over high cost of Barclays' deal," which stated in part:

He was clearly furious. Claiming that he had been denied the opportunity to speak, he stormed to the front of the conference hall, intent on telling the City heavyweights in his sights what he thought of them, only to be restrained by a posse of security staff. For this investor, certainly, Barclays' decision to turn to the Middle East for funds was a step too far.

That Barclays got its money yesterday will be a relief to the bank. Private and institutional investors voted to accept its contentious scheme to raise £5.8 billion from the Middle East.

But the meeting at the ExCel conference centre in East London was also a stark illustration that the price, at least in terms of management pride, for that cash has been high. Investors lined up to berate the bank and its executives and such was the bad feeling that Marcus Agius, the Barclays chairman, was forced to end questioning. Both he and John Varley, the chief executive, faced calls to resign.

Many in the audience, about 500-strong, complained about being shut out of a capital plan that gives the Middle Eastern investors almost a third of Barclays' shares.

The bank has ignored the long-established right of first refusal for its existing investors, who now face dilution. Instead, Barclays choose to raise more than £7 billion, of which £5.8 billion was through a combination of securities issued to Qatar Holdings and Sheikh Mansour Bin Zayed al-Nahyan, a member of the Abu Dhabi Royal Family. The remaining £1.5 billion was raised through a placement to institutional shareholders and was not part of yesterday's vote.

Retail investors were shut out entirely. The bank won enough support to press ahead with its fundraising, but the refusal by 22 per cent of the bank's shareholders to back it was a significant blow. A total of 584,125,704 votes were cast against the bank's resolution to increase its share capital, while a further 528,965,914 votes were withheld as investors, particularly institutions, abstained.

Investor anger had already led Barclays to waive bonuses for four of its directors this year and put its entire board up for reelection next April. Yet the meeting heard demands for salary caps for directors, the end of executive share options and demands to resume dividend payments. When the harshest critics made their points, they did so to regular applause.

"Shame on you," Eric Chalker, who owned 1,800 Barclays shares, said.

Trevor White, who has been a Barclays shareholder since 1962, said that he had lost £200,000 on his investment within the past 12 months.

He said that he had written to both Mr Varley and Mr Agius demanding their resignations.

Institutions, too, made their voices heard, among them F&C Asset Management. George Dallas, the director of corporate governance at F&C, which owns 57 million shares, said: "We think that this amounts to a clear and egregious abuse of preemption rights. We object that the consequences of voting against this particular transaction would make a bad situation worse."

Mr Agius expressed Barclays' "deep regret" over the fundraising, but he did not apologise for the bank's position, as his counterparts at Royal Bank of Scotland had last week. He said that taking the "Devil's route" and shutting out the bank's long-term owners had put Barclays in an "exquisitely awkward position".

He acknowledged the anger felt by investors, but said that the bank's entire future could have been put at risk if it had pressed too hard for preemption rights to be respected. "A dangerous leak that we were struggling to find money on the right terms could have been terminal," he said.

- 14 -

Afterwards, Derek Norcup, who has 7,000 Barclays shares, said that he had arrived with an open mind but had decided to vote against. The cancelling of the dividend, particularly when Mr Varley had hailed the bank's profitability, was the final straw, he said.

60.    In mid-January 2009, Barclays announced plans to cut up to 2,100 jobs in its retail and commercial banking units.  Analysts were surprised by this development:

"We think this is a significant development, as previously Barclays had been arguing that this downturn was a great time to invest in people," said analysts at Evolution Securities.

"Management have consistently been too upbeat with their outlook statements; we are going into the worst downturn in living memory and it is hard to see how Barclays, with a 1.4 trillion pound balance sheet, is not going to have to recognize larger write-downs," they added.

61.    On this news, Barclays Bank's Preferred Stock collapsed to below $10 per share of Preferred Stock and continued to trade at that level.

62.    The true facts which were omitted from the Registration Statement were:

(a)    Barclays' portfolio of mortgage-related securities was impaired to a much larger extent than had been disclosed;

(b)    Defendants failed to properly record losses for impaired assets;

(c)    Barclays' internal controls were inadequate to prevent the Company from improperly reporting its mortgage-related investments; and

(d)    Barclays was not as well capitalized as represented and would have to continually raise additional capital, which would dilute current holders and those investors purchasing Preferred Stock in the Offering.

## COUNT I

### Violations of §11 of the 1933 Act
### Against All Defendants

63.     Plaintiff repeats and realleges each and every allegation contained above.  For purposes of this Count, plaintiff expressly excludes and disclaims any allegation that could be construed as alleging fraud or intentional or reckless misconduct, as this Count is based solely on claims of strict liability and/or negligence under the 1933 Act.

64.     This Count is brought pursuant to §11 of the 1933 Act, 15 U.S.C. §77k, on behalf of the Class, against all defendants.

65.     The Registration Statement/Prospectus was false and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

66.     Barclays Bank is the registrant for the Offering.  As issuer of the shares, Barclays Bank is strictly liable to plaintiff and the Class for the misstatements and omissions.

67.     The Individual Defendants named herein were responsible for the contents and dissemination of the Registration Statement.  Each of the Individual Defendants signed or authorized the signing of the Registration Statement.

68.     The Underwriter Defendants named herein were responsible for the contents and dissemination of the Registration Statement.

69.     None of the defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not misleading.

70.     By reason of the conduct herein alleged, each defendant violated, and/or controlled a person who violated, §11 of the 1933 Act.

- 16 -

71.     Plaintiff acquired Barclays Bank Preferred Stock pursuant and/or traceable to the Registration Statement for the Offering.

72.     Plaintiff and the Class have sustained damages.  At the time of their purchases of Barclays Bank's Preferred Stock, plaintiff and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein and could not have reasonably discovered those facts prior to the Fall of 2008.  Less than one year has elapsed from the time that plaintiff discovered or reasonably could have discovered the facts upon which this complaint is based to the time that plaintiff filed this complaint.  Less than three years elapsed between the time that the securities upon which this Count is brought were offered to the public and the time plaintiff filed this complaint.

## COUNT II

### Violations of §12(a)(2) of the 1933 Act
### Against Defendants Barclay Bank, Barclays
### and the Underwriter Defendants

73.     Plaintiff repeats and realleges the allegations set forth above as if set forth fully herein.  For purposes of this Count, plaintiff expressly excludes and disclaims any allegation that could be construed as alleging fraud or intentional or reckless misconduct, as this Count is based solely on claims of strict liability and/or negligence under the 1933 Act.

74.     By means of the defective Prospectus, defendants assisted in the sale of shares of the Company's Preferred Stock to plaintiff and other members of the Class.

75.     The Prospectus contained untrue statements of material fact, and concealed and failed to disclose material facts, as detailed above.  Defendants owed plaintiff and the other members of the Class who purchased Barclays Bank Preferred Stock pursuant to the Prospectus the duty to make a reasonable and diligent investigation of the statements contained in the Prospectus to ensure that such statements were true and that there was no omission to state a material fact required to be stated

in order to make the statements contained therein not misleading. Defendants, in the exercise of reasonable care, should have known of the misstatements and omissions contained in the Prospectus as set forth above.

76.     Plaintiff did not know, nor in the exercise of reasonable diligence could have known, of the untruths and omissions contained in the Prospectus at the time plaintiff acquired the Company's securities.

77.     By reason of the conduct alleged herein, defendants violated §12(a)(2) of the 1933 Act. As a direct and proximate result of such violations, plaintiff and the other members of the Class who purchased Barclays Bank Preferred Stock pursuant to the Prospectus sustained substantial damages in connection with their purchases of Barclays Bank Preferred Stock. Accordingly, plaintiff and the other members of the Class who hold such shares have the right to rescind and recover the consideration paid for their shares, and hereby tender their shares to the defendants sued herein. Class members who have sold their shares seek damages to the extent permitted by law.

### COUNT III

#### Violations of §15 of the 1933 Act
#### Against the Individual Defendants

78.     Plaintiff repeats and realleges each and every allegation contained above. For purposes of this Count, plaintiff expressly excludes and disclaims any allegation that could be construed as alleging fraud or intentional or reckless misconduct, as this Count is based solely on claims of strict liability and/or negligence under the 1933 Act.

79.     This Count is brought pursuant to §15 of the 1933 Act against the Individual Defendants.

80.     Each of the Individual Defendants was a control person of Barclays Bank and Barclays by virtue of his or her position as a director, senior officer and/or major shareholders of

Barclays Bank and Barclays which allowed each of these defendants to exercise control over Barclays Bank and Barclays and its operations.

81.     Each of the Individual Defendants was a culpable participant in the violations of §11 of the 1933 Act alleged in the Count above, based on their having signed or authorized the signing of the Registration Statement and having otherwise participated in the process which allowed the Offering to be successfully completed.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for relief and judgment, as follows:

A.     Determining that this action is a proper class action and certifying plaintiff as a Class representative;

B.     Awarding compensatory damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.     Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

D.     Awarding rescission or a rescissory measure of damages; and

E.     Such equitable/injunctive or other relief as deemed appropriate by the Court.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

DATED: March 4, 2009                     COUGHLIN STOIA GELLER
                                            RUDMAN & ROBBINS LLP
                                         SAMUEL H. RUDMAN
                                         DAVID A. ROSENFELD


                                         _____
                                                    SAMUEL H. RUDMAN

- 19 -

58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
DARREN J. ROBBINS
DAVID C. WALTON
CATHERINE J. KOWALEWSKI
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

Attorneys for Plaintiff

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

MARSHALL FREIDUS ("Plaintiff") declares:

1.    Plaintiff has reviewed a complaint and authorized its filing.

2.    Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3.    Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.    Plaintiff has made the following transaction(s) during the Class Period in the securities that are the subject of this action:

**Acquisitions:**

| Date Acquired | Number of Shares Acquired | Acquisition Price Per Share |
|---|---|---|
| 4/21/06 | 10,000 shares | $25.00 |
|  |  |  |
|  |  |  |
|  |  |  |

5.    Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws except as detailed below during the three years prior to the date of this Certification:

*Freidus, et al. v. ING Groep N.V., et al.*, No. 09-cv-01049-P (S.D.N.Y.)

6.    The Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery,

BARCLAYS

except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this ___ day of _MARCH___, 2009.

_____
MARSHALL FREIDUS

- 2 -

09 CIV 1989

JS 44C/SDNY
REV. 1/2008

JUDGE CROTTY

**CIVIL COVER SHEET**

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for use of the Clerk of Court for the purpose of initiating the civil docket sheet.

| PLAINTIFFS | DEFENDANTS |
|---|---|
| MARSHALL FREIDUS, on Behalf of Himself and All Others Similarly Situated, | BARCLAYS BANK PLC, et al. (Please see attached Schedule A for additional defendants) |

| ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |
|---|---|
| Coughlin Stoia Geller Rudman & Robbins, 58 So. Service Road, Suite 200, Melville, NY 11747 (631) 367-7100 | MAR 0 4 2009 |

CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE)
(DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)
Pursuant to Sections 10(b) and 20(a) of the Exchange Act [15 U.S.C. Sections 78j(b) and 78t (a)] and Rule 10b-5 promulgated thereunder by the United States Securities and Exchange Commission [17 C.F.R Section 240.10b-5].

Has this or a similar case been previously filed in SDNY at any time? No? [✓] Yes? [ ]  Judge Previously Assigned _____

If yes, was this case  Vol.[ ]  Invol. [ ]  Dismissed. No[ ] Yes [ ]  If yes, give date _____ & Case No. _____

*(PLACE AN [x] IN ONE BOX ONLY)*  NATURE OF SUIT

TORTS  ACTIONS UNDER STATUTES

**CONTRACT**

| | |
|---|---|
| [ ] 110 | INSURANCE |
| [ ] 120 | MARINE |
| [ ] 130 | MILLER ACT |
| [ ] 140 | NEGOTIABLE INSTRUMENT |
| [ ] 150 | RECOVERY OF OVERPAYMENT & ENFORCEMENT OF JUDGMENT |
| [ ] 151 | MEDICARE ACT |
| [ ] 152 | RECOVERY OF DEFAULTED STUDENT LOANS (EXCL VETERANS) |
| [ ] 153 | RECOVERY OF OVERPAYMENT OF VETERAN'S BENEFITS |
| [ ] 160 | STOCKHOLDERS SUITS |
| [ ] 190 | OTHER CONTRACT |
| [ ] 195 | CONTRACT PRODUCT LIABILITY |
| [ ] 196 | FRANCHISE |

**REAL PROPERTY**

| | |
|---|---|
| [ ] 210 | LAND CONDEMNATION |
| [ ] 220 | FORECLOSURE |
| [ ] 230 | RENT LEASE & EJECTMENT |
| [ ] 240 | TORTS TO LAND |
| [ ] 245 | TORT PRODUCT LIABILITY |
| [ ] 290 | ALL OTHER REAL PROPERTY |

**PERSONAL INJURY**

| | |
|---|---|
| [ ] 310 | AIRPLANE |
| [ ] 315 | AIRPLANE PRODUCT LIABILITY |
| [ ] 320 | ASSAULT, LIBEL & SLANDER |
| [ ] 330 | FEDERAL EMPLOYERS' LIABILITY |
| [ ] 340 | MARINE |
| [ ] 345 | MARINE PRODUCT LIABILITY |
| [ ] 350 | MOTOR VEHICLE |
| [ ] 355 | MOTOR VEHICLE PRODUCT LIABILITY |
| [ ] 360 | OTHER PERSONAL INJURY |

**PERSONAL INJURY**

| | |
|---|---|
| [ ] 362 | PERSONAL INJURY - MED MALPRACTICE |
| [ ] 365 | PERSONAL INJURY PRODUCT LIABILITY |
| [ ] 368 | ASBESTOS PERSONAL INJURY PRODUCT LIABILITY |

**PERSONAL PROPERTY**

| | |
|---|---|
| [ ] 370 | OTHER FRAUD |
| [ ] 371 | TRUTH IN LENDING |
| [ ] 380 | OTHER PERSONAL PROPERTY DAMAGE |
| [ ] 385 | PROPERTY DAMAGE PRODUCT LIABILITY |

**ACTIONS UNDER STATUTES**

**CIVIL RIGHTS**

| | |
|---|---|
| [ ] 441 | VOTING |
| [ ] 442 | EMPLOYMENT |
| [ ] 443 | HOUSING/ ACCOMMODATIONS |
| [ ] 444 | WELFARE |
| [ ] 445 | AMERICANS WITH DISABILITIES - EMPLOYMENT |
| [ ] 446 | AMERICANS WITH DISABILITIES -OTHER |
| [ ] 440 | OTHER CIVIL RIGHTS |

**PRISONER PETITIONS**

| | |
|---|---|
| [ ] 510 | MOTIONS TO VACATE SENTENCE 20 USC 2255 |
| [ ] 530 | HABEAS CORPUS |
| [ ] 535 | DEATH PENALTY |
| [ ] 540 | MANDAMUS & OTHER |
| [ ] 550 | CIVIL RIGHTS |
| [ ] 555 | PRISON CONDITION |

**FORFEITURE/PENALTY**

| | |
|---|---|
| [ ] 610 | AGRICULTURE |
| [ ] 620 | OTHER FOOD & DRUG |
| [ ] 625 | DRUG RELATED SEIZURE OF PROPERTY 21 USC 881 |
| [ ] 630 | LIQUOR LAWS |
| [ ] 640 | RR & TRUCK |
| [ ] 650 | AIRLINE REGS |
| [ ] 660 | OCCUPATIONAL SAFETY/HEALTH |
| [ ] 690 | OTHER |

**LABOR**

| | |
|---|---|
| [ ] 710 | FAIR LABOR STANDARDS ACT |
| [ ] 720 | LABOR/MGMT RELATIONS |
| [ ] 730 | LABOR/MGMT REPORTING & DISCLOSURE ACT |
| [ ] 740 | RAILWAY LABOR ACT |
| [ ] 790 | OTHER LABOR LITIGATION |
| [ ] 791 | EMPL RET INC SECURITY ACT |

**IMMIGRATION**

| | |
|---|---|
| [ ] 462 | NATURALIZATION APPLICATION |
| [ ] 463 | HABEAS CORPUS- ALIEN DETAINEE |
| [ ] 465 | OTHER IMMIGRATION ACTIONS |

**BANKRUPTCY**

| | |
|---|---|
| [ ] 422 | APPEAL 28 USC 158 |
| [ ] 423 | WITHDRAWAL 28 USC 157 |

**PROPERTY RIGHTS**

| | |
|---|---|
| [ ] 820 | COPYRIGHTS |
| [ ] 830 | PATENT |
| [ ] 840 | TRADEMARK |

**SOCIAL SECURITY**

| | |
|---|---|
| [ ] 861 | HIA (1395ff) |
| [ ] 862 | BLACK LUNG (923) |
| [ ] 863 | DIWC/DIWW (405(g)) |
| [ ] 864 | SSID TITLE XVI |
| [ ] 865 | RSI (405(g)) |

**FEDERAL TAX SUITS**

| | |
|---|---|
| [ ] 870 | TAXES (U.S. Plaintiff or Defendant) |
| [ ] 871 | IRS-THIRD PARTY 26 USC 7609 |

**OTHER STATUTES**

| | |
|---|---|
| [ ] 400 | STATE REAPPORTIONMENT |
| [ ] 410 | ANTITRUST |
| [ ] 430 | BANKS & BANKING |
| [ ] 450 | COMMERCE |
| [ ] 460 | DEPORTATION |
| [ ] 470 | RACKETEER INFLU- ENCED & CORRUPT ORGANIZATION ACT (RICO) |
| [ ] 480 | CONSUMER CREDIT |
| [ ] 490 | CABLE/SATELLITE TV |
| [ ] 810 | SELECTIVE SERVICE |
| [x] 850 | SECURITIES/ COMMODITIES/ EXCHANGE |
| [ ] 875 | CUSTOMER CHALLENGE 12 USC 3410 |
| [ ] 890 | OTHER STATUTORY ACTIONS |
| [ ] 891 | AGRICULTURAL ACTS |
| [ ] 892 | ECONOMIC STABILIZATION ACT |
| [ ] 893 | ENVIRONMENTAL MATTERS |
| [ ] 894 | ENERGY ALLOCATION ACT |
| [ ] 895 | FREEDOM OF INFORMATION ACT |
| [ ] 900 | APPEAL OF FEE DETERMINATION UNDER EQUAL ACCESS TO JUSTICE |
| [ ] 950 | CONSTITUTIONALITY OF STATE STATUTES |

680317

*Check if demanded in complaint:*

[X] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DO YOU CLAIM THIS CASE IS RELATED TO A CIVIL CASE NOW PENDING IN S.D.N.Y.? IF SO, STATE:

DEMAND $_____  OTHER _____   JUDGE _____  DOCKET NUMBER_____

*Check YES only if demanded in complaint*
JURY DEMAND: [✓] YES [ ] NO

NOTE:  Please submit at the time of filing an explanation of why cases are deemed related.

*(PLACE AN  x  IN ONE BOX ONLY)*            **ORIGIN**

| ☑ 1 Original Proceeding | ☐ 2a. Removed from State Court ☐ 2b. Removed from State Court AND at least one party is pro se. | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from (Specify District) | ☐ 6 Multidistrict Litigation | ☐ 7 Appeal to District Judge from Magistrate Judge Judgment |

*(PLACE AN  x  IN ONE BOX ONLY)*       **BASIS OF JURISDICTION**

☐ 1 U.S. PLAINTIFF    ☐ 2 U.S. DEFENDANT    ☑ 3 FEDERAL QUESTION (U.S. NOT A PARTY)    ☐ 4 DIVERSITY

***IF DIVERSITY, INDICATE CITIZENSHIP BELOW. (28 USC 1322, 1441)***

CITIZENSHIP OF PRINCIPAL PARTIES (FOR DIVERSITY CASES ONLY)

(Place an [X] in one box for Plaintiff and one box for Defendant)

|  | PTF | DEF |  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|---|---|---|
| CITIZEN OF THIS STATE | [ ] 1 | [ ] 1 | CITIZEN OR SUBJECT OF A FOREIGN COUNTRY | [ ] 3 | [ ] 3 | INCORPORATED and PRINCIPAL PLACE OF BUSINESS IN ANOTHER STATE | [ ] 5 | [ ] 5 |
| CITIZEN OF ANOTHER STATE | [ ] 2 | [ ] 2 | INCORPORATED or PRINCIPAL PLACE OF BUSINESS IN THIS STATE | [ ] 4 | [ ] 4 | FOREIGN NATION | [ ] 6 | [ ] 6 |

PLAINTIFF(S) ADDRESS(ES) AND COUNTY(IES)

```
24 Hemlock Road
Livingston, NJ  07039
(Essex County)
```

DEFENDANT(S) ADDRESS(ES) AND COUNTY(IES)

```
Please see attached Schedule A.
```

DEFENDANT(S) ADDRESS UNKNOWN
REPRESENTATION IS HEREBY MADE THAT, AT THIS TIME, I HAVE BEEN UNABLE, WITH REASONABLE DILIGENCE, TO ASCERTAIN THE RESIDENCE ADDRESSES OF THE FOLLOWING DEFENDANTS:

| | |
|---|---|
| Matthew William Barrett | Sir Nigel Rudd |
| Sir Richard Broadbent | Stephen George Russell |
| Sir Andrew Likierman | John Michael Sunderland |

Check one:    THIS ACTION SHOULD BE ASSIGNED TO:    ☐ WHITE PLAINS    ☑ MANHATTAN
(DO NOT check either box if this a PRISONER PETITION.)

DATE  03/04/08    SIGNATURE OF ATTORNEY OF RECORD      ADMITTED TO PRACTICE IN THIS DISTRICT

RECEIPT #        [ ] NO
[X] YES (DATE ADMITTED Mo. 05   Yr. 1995 )
Attorney Bar Code # SF7957

K. FOX

Magistrate Judge is to be designated by the Clerk of the Court.

Magistrate Judge _____ is so Designated.

J. Michael McMahon, Clerk of Court by _____ Deputy Clerk, DATED _____.

UNITED STATES DISTRICT COURT (NEW YORK SOUTHERN)

Schedule A

Barclays Bank PLC
One Churchill Place
London E14 5HP

Barclays PLC
One Churchill Place
London E14 5HP

Matthew William Barrett
UK

John Silvester Varley
9 Luxemburg Gardens
Hammersmith London W67EA

Naguib Kheraj
2 Cedarland Terrace
Copse Hill London SW20 0NB

Robert Edward Diamond, Jr.
UK

Sir Richard Broadbent
UK

Richard Leigh Clifford
6 St James Square
London SW14 4LD

Dame Sandra J.N. Dawson
The MasterLodge
Sidney Sussex
College
Cambridge CB2 3HU

Sir Andrew Likierman
UK

Sir Nigel Rudd
UK

Stephen George Russell
UK

John Michael Sunderland
UK

BARCLAYS CAPITAL SECURITIES LIMITED
5 The North Colonnade
Canary Wharf UK

CITIGROUP GLOBAL MARKETS INC.
388 Greenwich St
NY NY 10080
(New York City)

MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED
4 World Financial Center
NY NY 10080
(New York City)

WACHOVIA CAPITAL MARKETS, LLC
Corp Service Co
80 State St
Albany NY 12207
(Albany County)

MORGAN STANLEY & CO. INCORPORATED
1585 Broadway
NY NY 10036
(New York City)

UBS Securities LLC
Corp Service Co
80 State St
Albany NY 12207
(Albany County)

A.G. EDWARDS & SONS, INC.
600 California St, Ste 1600
San Francisco, CA 94108
(San Mateo County)

BNP PARIBAS SECURITIES CORP.
HQ: 787 7th Ave
NY NY 10019
(New York City)

GOLDMAN, SACHS & CO.
85 Broad St
NY NY 10004
(New York City)

KEYBANC CAPITAL MARKETS INC.
800 Superior Ave
Cleveland OH 44114
(Cuyahoga County)

RBC Dain Rauscher Inc.
60 South 6th St
Minneapolis MN 55402
(Anoka County)

SUNTRUST CAPITAL MARKETS, INC.
HQ: 303 Peachtree St NE 24th Flr
Atlanta GA 30308
(Cobb County)

WELLS FARGO SECURITIES LLC
600 California St, Ste 1600
San Francisco, CA 94108
(San Mateo County)