UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                : Master File No. 1:09-cv-01989-PAC
IN RE BARCLAYS BANK PLC SECURITIES  :
LITIGATION                                   : ECF Case
                                                :
This Document Relates to:  All Actions : Electronically Filed
                                                :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


# MEMORANDUM OF LAW IN SUPPORT OF THE UNDERWRITER DEFENDANTS' MOTION TO DISMISS COUNTS I AND II OF THE CONSOLIDATED AMENDED COMPLAINT


SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Jay B. Kasner (jay.kasner@skadden.com)
Scott D. Musoff (scott.musoff@skadden.com)
Four Times Square
New York, New York  10036
(212) 735-3000

Attorneys for the Underwriter Defendants

## TABLE OF CONTENTS
Page

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT .................................................................................................1

STATEMENT OF FACTS ...........................................................................................................4

    A.    The Offerings ..................................................................................................4

    B.    The Parties......................................................................................................5

        1.    Plaintiffs ................................................................................................5

        2.    The Underwriter Defendants ................................................................6

    C.    Barclays Announces Charges Related to "Dislocations in the Credit Markets" .................6

    D.    Post-Offering Disclosures ..............................................................................7

    E.    Claims Against the Underwriter Defendants ................................................7

ARGUMENT .................................................................................................................................8

COUNTS I AND II OF THE AMENDED COMPLAINT SHOULD BE DISMISSED ...............8

I.    PLAINTIFFS FAIL TO ALLEGE ANY ACTIONABLE MISSTATEMENTS OR OMISSIONS IN THE OFFERING DOCUMENTS .........................................................9

II.    PLAINTIFFS LACK STANDING TO SUE UNDER SECTION 12(a)(2) .....................10

III.    PLAINTIFFS HAVE FAILED TO SUFFICIENTLY ALLEGE A SECURITIES ACT CLAIM WITH REGARD TO THE APRIL 2008 OFFERING OF SERIES 5 SECURITIES .................................................................................................................12

CONCLUSION ............................................................................................................................14

# **TABLE OF AUTHORITIES**

<u>Cases</u>                                                                                                                <u>Page</u>

*In re American International Group, Inc. Securities Litigation*,
   No. 04 Civ. 8141(DAB), 2010 WL 646720 (S.D.N.Y. Feb. 22, 2010)..........................13

*In re Alcatel Securities Litigation*,
   382 F. Supp. 2d 513 (S.D.N.Y. 2005) ........................................................................10

*Amida Capital Management II, LLC v. Cerberus Capital Management, L.P.*,
   669 F. Supp. 2d 430 (S.D.N.Y. 2009) ..........................................................................6

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009)..................................................................................................8

*ATSI Communications, Inc. v. Shaar Fund, Ltd.*,
   493 F.3d 87 (2d Cir. 2007)............................................................................................4

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ......................................................................................................8

*Brown v. Mitchell-Innes & Nash, Inc.*,
   No. 06 Civ. 7871(PAC), 2009 WL 1108526 (S.D.N.Y. Apr. 24, 2009) ..........................8

*Caiafa v. Sea Containers Ltd.*,
   525 F. Supp. 2d 398 (S.D.N.Y. 2007) ........................................................................11

*Castorino v. Citibank N.A.*,
   No. 07 Civ. 10606 (PAC), 2008 WL 5114482 (S.D.N.Y. Dec. 5, 2008)..........................4

*DeMaria v. Andersen*,
   153 F. Supp. 2d 300 (S.D.N.Y. 2001), *aff'd*, 318 F.3d 170 (2d Cir. 2003) ......................12

*In re Deutsche Telekom AG Securities Litigation*,
   No. 00 CIV 9475 SHS, 2002 WL 244597 (S.D.N.Y. Feb. 20, 2002) .............................11

*First Nationwide Bank v. Gelt Funding Corp.*,
   27 F.3d 763 (2d Cir. 1994).............................................................................................4

*Gustafson v. Alloyd Co.*,
   513 U.S. 561 (1995) ....................................................................................................10

*In re JP Morgan Chase Securities Litigation*,
   363 F. Supp. 2d 595 (S.D.N.Y. 2005) ............................................................................9

*Kramer v. Time Warner Inc.*,
   937 F.2d 767 (2d Cir. 1991)...........................................................................................4

*Ladmen Partners, Inc. v. Globalstar, Inc.*,
   No. 07 Civ. 0976(LAP), 2008 WL 4449280 (S.D.N.Y. Sept. 30, 2008).........................10

*In re Livent, Inc. Noteholders Securities Litigation*,
   151 F. Supp. 2d 371 (S.D.N.Y. 2001) ................................................................ 3, 12, 13

*Medis Investor Group v. Medis Technologies, Ltd.*,
   586 F. Supp. 2d 136 (S.D.N.Y. 2008) .............................................................................4

*In re Merrill Lynch & Co. Research Reports Securities Litigation*,
   289 F. Supp. 2d 416 (S.D.N.Y. 2003) .............................................................................4

*New Jersey Carpenters Health Fund v. DLJ Mortgage Capital, Inc.*,
   No. 08 Civ. 5653(PAC), Order (S.D.N.Y. Mar. 29, 2010)................................ 2, 8, 10, 11

*Panther Partners, Inc. v. Ikanos Communications, Inc.*,
   538 F. Supp. 2d 662 (S.D.N.Y. 2008) .........................................................................2, 9

*Pinter v. Dahl*,
   486 U.S. 622 (1988) .....................................................................................................12

*Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imperial
   Bank of Commerce*,
   No. 08 Civ. 8143(WHP), 2010 WL 961596 (S.D.N.Y. Mar. 17, 2010).........................1, 6

*Rombach v. Chang*,
   355 F.3d 164 (2d Cir. 2004).......................................................................................9, 10

*In re Sterling Foster & Co., Securities Litigation*,
   222 F. Supp. 2d 216 (E.D.N.Y. 2002) ...........................................................................11

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) .......................................................................................................4

<u>Statutes and Rules</u>

15 U.S.C. § 77k...................................................................................................................2, 12

15 U.S.C. §§ 77*l*..................................................................................................................2, 12

Fed. R. Civ. P. 9(b) ..................................................................................................................9

17 C.F.R. § 230.415(a) (2010)..................................................................................................4

Defendants A.G. Edwards & Sons, Inc., Banc of America Securities LLC, Barclays Capital Securities Limited, BNP Paribas Securities Corp., Citigroup Global Markets Inc., Goldman, Sachs & Co., KeyBanc Capital Markets, Merrill Lynch, Pierce, Fenner & Smith Incorporated, Morgan Stanley & Co., Inc., RBC Dain Rauscher Inc., SunTrust Capital Markets, UBS Securities LLC, and Wachovia Capital Markets, LLC and Wells Fargo Securities, LLC (together, n/k/a Wells Fargo Securities, LLC) (collectively, the "Underwriter Defendants") respectfully submit this memorandum of law in support of their motion to dismiss Counts I and II of the Consolidated Amended Complaint (the "Amended Complaint" or "Am. Compl.") with prejudice, pursuant to Rules 8(a), 9(b), and 12(b)(6) of the Federal Rules of Civil Procedure. To the extent applicable to them, the Underwriter Defendants adopt the arguments set forth in the Barclays Defendants' Memorandum of Law in support of their motion to dismiss the Consolidated Amended Complaint (the "Barclays Defendants' Memorandum of Law").

## PRELIMINARY STATEMENT

Beginning in the third quarter of 2007, the world financial markets suffered an unprecedented meltdown, including a collapse of the credit markets. As a result of this crisis, banks around the world announced substantial write-downs of mortgage-related assets. *See Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imperial Bank of Commerce*, No. 08 Civ. 8143 (WHP), 2010 WL 961596, at *11 (S.D.N.Y. Mar. 17, 2010) (dismissing putative shareholder complaint that "describe[d] an unprecedented paralysis of the credit market and a global recession"). It was in this context that, on November 15, 2007, Barclays Bank PLC ("Barclays") announced £1.3 billion in write-downs related to its mortgage and credit-related assets. Additional write-downs followed.

On March 4, 2009, the first of five putative class action complaints was filed against Barclays, certain of its officers and directors, and certain of the Underwriter Defendants alleging

violations of Sections 11, 12, and 15 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §§ 77k, 77*l*, and 77o.  Using "craftly drafted" hindsight allegations implying "that what only became clear due to subsequent events was somehow known . . . far earlier" *Panther Partners, Inc. v. Ikanos Commc'ns, Inc.*, 538 F. Supp. 2d 662, 669 (S.D.N.Y. 2008) (Crotty, J.), Plaintiffs alleged that the registration statements and prospectuses relating to four offerings by Barclays of preferred stock between April 2006 and April 2008 underwritten by some or all of the Underwriter Defendants were "false and misleading."  Plaintiffs further alleged that the offering materials incorporated public filings that failed to present accurate disclosures regarding Barclays' exposure to mortgage and credit-related assets.

On its face, the Amended Complaint is fatally defective and Counts I and II against the Underwriter Defendants should be dismissed for the following reasons.  *First*, for the reasons set forth in the Barclays Defendants' Memorandum of Law, Plaintiffs do not allege any actionable misstatements or omissions in the offering documents and their Securities Act claims, therefore, fail as a matter of law.  (*See* Point I *infra.*)

*Second*, Plaintiffs lack standing to assert any claims pursuant to Section 12(a)(2) of the Securities Act.  To establish standing under Section 12(a)(2), a plaintiff must allege facts sufficient to demonstrate that it purchased securities (i) in the public offerings at issue rather than in any secondary market and (ii) from the defendants actually being sued.  *See New Jersey Carpenters Health Fund v. DLJ Mortgage Capital, Inc.*, No 08 Civ. 5653 (PAC), Order at 6-7 (S.D.N.Y. Mar. 29, 2010) (Crotty, J.) (Perrin Decl. Ex. W).[1]  Conspicuously absent from the Amended Complaint, however, are *any* allegations that Plaintiffs actually purchased the

---

[1]   Citations to "Perrin Decl. Ex. __" are to documents attached as exhibits to the Declaration of Christopher A. Perrin, dated April 19, 2010, filed in support of the Barclays Defendants' Motion to Dismiss the Consolidated Amended Complaint.

securities in the public offerings at issue as opposed to the secondary market, or that Plaintiffs purchased the securities from any of the Underwriter Defendants.  As a result, the Section 12(a)(2) claims should be dismissed.  (*See* Point II *infra.*)

*Finally*, Plaintiffs fail to allege sufficiently any Securities Act claims with regard to the April 8, 2008 offering of Barclays 8.125% Non-Cumulative Callable Dollar Preference Shares, Series 5.  Plaintiff Martin Ettin, the only named Plaintiff alleged to have purchased the Series 5 securities, purportedly purchased them *after* the date on which Plaintiffs allege Barclays "[made] adequate disclosures of its capital credit market exposures." (Am. Compl. ¶ 184.)  A plaintiff, however, may not recover under Sections 11 or 12(a)(2) where, as here, he knew of the alleged "untruth or omission" at the time he purchased the subject securities.  *See In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 441 (S.D.N.Y. 2001) (citations omitted).  (*See* Point III *infra.*)

For these, and additional reasons outlined below and in the Barclays Defendants' Memorandum of Law, Counts I and II of the Amended Complaint should be dismissed with prejudice against the Underwriter Defendants.

## **STATEMENT OF FACTS**[2]

A.   The Offerings

Barclays, a worldwide financial institution headquartered in London, filed shelf registration statements[3] with the Securities and Exchange Commission on September 14, 2005 (the "2005 Registration Statement") and August 31, 2007 (the "2007 Registration Statement") (collectively, the "Registration Statements"). (Am. Compl. ¶ 1.) Between April 2006 and April 2008, Barclays issued preferred securities in the form of American Depository Shares in four separate offerings (collectively, the "Offerings") and filed prospectus supplements to the Registration Statements (collectively, the "Offerings Documents"). (*Id.*) The Offerings were as follows:

- 6.625% Dollar-Denominated Non-Cumulative Preference Shares, Series 2 (the "Series 2 Securities"), offered in April 2006;

- 7.1% Dollar-Denominated Non-Cumulative Callable Preference Shares, Series 3 (the "Series 3 Securities"), offered in September 2007;

---

[2]   For purposes of a motion to dismiss, the Court may consider "'any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference . . . and documents possessed by or known to the plaintiff[s] and upon which [they] relied in bringing the suit.'" *Medis Investor Group v. Medis Techs., Ltd.*, 586 F. Supp. 2d 136, 138 (S.D.N.Y. 2008) (Crotty, J.) (quoting *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ("[C]ourts must consider . . . sources courts ordinarily examine when ruling on Rule 12(b)(6) motions . . . , in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."). In doing so, however, "the [C]ourt is 'not obliged to accept the allegations of the complaint as to how to construe such documents. . . .'" *Castorino v. Citibank N.A.*, No. 07 Civ. 10606 (PAC), 2008 WL 5114482, at *3 n.3 (S.D.N.Y. Dec. 5, 2008) (Crotty, J.) (citation omitted). In addition, the Court may consider market phenomena, such as the unprecedented liquidity crisis that began in 2007. *See, e.g.*, *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 770 (2d Cir. 1994) (real estate market downturn); *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991) (junk bond market collapse); *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 289 F. Supp. 2d 416, 421 n.6 (S.D.N.Y. 2003) (judicial notice of "the internet bubble and its subsequent crash").

[3]   A shelf registration statement allows securities to "be registered for an offering to be made on a continuous or delayed basis in the future." 17 C.F.R. § 230.415(a) (2010).

- 7.750% Non-Cumulative Callable Dollar Preference Shares, Series 4 (the "Series 4 Securities"), offered in December 2007; and

- 8.125% Non-Cumulative Callable Dollar Preference Shares, Series 5 (the "Series 5 Securities"), offered in April 2008 (the "April 2008 Offering"). (*Id.*)

B.  The Parties

   1.  Plaintiffs

Lead Plaintiff Marshall Freidus allegedly acquired Series 2 Securities "issued pursuant or traceable to the . . . 2005 Registration Statement and Prospectuses as set forth in the Certification filed with the Court on May 4, 2009." (Am. Compl. ¶ 18.) As of the date of his Certification, Freidus had not sold any of the securities. (Perrin Decl. Ex. B.)

Lead Plaintiff Dora L. Mahboubi allegedly acquired Series 3 Securities "issued pursuant or traceable to the . . . 2007 Registration Statement and Prospectuses as set forth in the Certification filed with the Court on May 4, 2009." (Am. Compl. ¶ 19.) As of the date of her Certification, Mahboubi had not sold any of the securities. (Perrin Decl. Ex. C.)

Lead Plaintiffs Stewart and Sharon Thompson, Trustees for the S.O. Thompson Rev. Trust and the S.G. Thompson Rev. Trust, allegedly acquired Series 4 Securities "issued pursuant or traceable to the . . . 2007 Registration Statement and Prospectuses as set forth in the Certification filed with the Court on May 4, 2009." (Am. Compl. ¶ 20.) As of the date of their Certification, Stewart and Sharon Thompson had not sold any of the securities. (Perrin Decl. Ex. D.)

Additional named Plaintiff Martin Ettin allegedly acquired Series 5 Securities "issued pursuant or traceable to the . . . 2007 Registration Statement and Prospectuses as set forth in the Certification filed with the Court on May 6, 2009." (Am. Compl. ¶ 21.) According to his Certification, on September 19, 2008, approximately five months after the April 2008 Offering,

5

Ettin acquired 6200 shares of the Series 5 Securities at a price of $20.0612 per share. (Perrin Decl. Ex. E.) Approximately two weeks later, on October 7, 2008, Ettin sold all of his shares. (*Id.*)

      2.     The Underwriter Defendants

The Underwriter Defendants are financial services firms that acted as underwriters for certain of the Offerings. (Am. Compl. ¶¶ 43-56.)

C.    Barclays Announces Charges Related to "Dislocations in the Credit Markets"

By late-summer 2007, the credit markets had suffered an unparalleled liquidity seizure. *See, e.g.*, *Amida Capital Mgmt. II, LLC v. Cerberus Capital Mgmt., L.P.*, 669 F. Supp. 2d 430, 433 (S.D.N.Y. 2009) ("July 2007 marked the beginning of what was then called the 'credit crunch,' the first phase of the financial crisis that culminated in the fall of 2008."); *see also Plumbers & Steamfitters Local 773 Pension Fund*, 2010 WL 961596, at *11.

It was in this context that on November 15, 2007, Barclays announced £1.3 billion in write-downs related to its "credit, mortgage and leveraged finance related" assets. (Am. Compl. ¶ 115; Perrin Decl. Ex. K (11/15/07 Form 6-K) at 1.) Thereafter, on February 19, 2008, Barclays announced its year-end results for 2007. In doing so, Barclays disclosed, among other things, net losses of £1.635 billion "due to dislocations in the credit markets." (Am. Compl. ¶ 125; Perrin Decl. Ex. V (2/19/08 Form 6-K) at 46.) In addition, in its 2007 Annual Report on Form 20-F, Barclays disclosed that "[i]mpairment charges and other credit provisions rose 30% to £2,795 million" and that "[i]mpairment charges relating to US sub-prime mortgages and other credit market exposures were £782 million." (Am. Compl. ¶ 129; Perrin Decl. Ex. I (2007 Form 20-F) at 4.)

6

D.   Post-Offering Disclosures

Following the Offerings (the last of which occurred in April 2008), Barclays made additional disclosures regarding its mortgage and credit-related assets. For example, on May 15, 2008, Barclays announced that it had taken £1.7 billion in write-downs on mortgage and other investments. (Am. Compl. ¶¶ 186-87.) In addition, the May 15, 2008 disclosure provided a detailed breakdown of Barclay's credit market exposures as of March 31, 2008. (*Id.*)

Thereafter, on August 7, 2008, Barclays issued its 2008 Interim Results as of June 30, 2008, in which it disclosed that its first-half net income declined 34% to £1.72 billion and that such reduction was due, in part, to a write-down of £2.8 billion of credit-related assets. (Am. Compl. ¶ 190.) According to Plaintiffs, the Interim Results contained "adequate disclosures of [Barclays'] capital credit market exposures." (*Id.* ¶ 184.)[4]

E.   Claims Against the Underwriter Defendants

Plaintiffs purport to assert two claims against the Underwriter Defendants. Count I alleges that the Underwriter Defendants violated Section 11 of the Securities Act and Count II alleges that the Underwriter Defendants violated Section 12(a)(2) of the Securities Act. The Amended Complaint generally alleges, in formulaic fashion, that: (i) the Offerings took place; (ii) certain financial institutions served as underwriters for particular Offerings; (iii) the Offering Documents were "false and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein;" (iv) the Underwriter Defendants did not make "a reasonable investigation or posses[] reasonable grounds for the belief that the statements

---

[4]   Despite the various losses and write-downs related to its mortgage and credit-related assets, Barclays was never required to restate any financial statements or issue any corrective disclosures.

7

contained in the [Offering Documents] were true and without omission of any material facts, and were not misleading;" and, as a result, (v) the Underwriter Defendants are liable for violations of Sections 11 and 12(a)(2) of the Securities Act. (Am. Compl. ¶¶ 213, 216-19, 225-27.) Both the Section 11 and Section 12(a)(2) claims are based on the same alleged misstatements and omissions. Plaintiffs specifically allege that, "[a]s the credit markets peaked and then began their rapid decline, Barclays' credit market assets also began declining in value, and the risks of further decline increased exponentially. Yet there was [allegedly] no disclosure to investors" and the Offering Documents allegedly "contained virtually no information concerning the financial status of [Barclays] or the risks it faced." (Am. Compl. ¶¶ 6-7.)

## ARGUMENT

### COUNTS I AND II OF THE AMENDED COMPLAINT SHOULD BE DISMISSED

In evaluating a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must accept well-pleaded factual allegations as true. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "'A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *New Jersey Carpenters Health Fund v. DLJ Mortgage Capital, Inc.*, No 08 Civ. 5653 (PAC), Order at 5 (S.D.N.Y. Mar. 29, 2010) (Crotty, J.) (quoting *Iqbal*, 129 S. Ct. at 1949). "To survive a motion to dismiss, courts require 'enough facts to state a claim to relief that is plausible on its face.'" *Brown v. Mitchell-Innes & Nash, Inc.*, No. 06 Civ. 7871 (PAC), 2009 WL 1108526, at *3 (S.D.N.Y. Apr. 24, 2009) (Crotty, J.) (quoting *Twombly*, 550 U.S. at 570). "[C]raftily drafted" allegations "imply[ing] that what only became clear due to subsequent events was somehow known . . . far earlier," such as those asserted here, do not meet this

pleading standard. *Partners, Inc. v. Ikanos Commc'ns, Inc.*, 538 F. Supp. 2d 662, 669 (S.D.N.Y. 2008) (Crotty, J.).

Moreover, where Section 11 and Section 12(a)(2) claims "sound in fraud," they are subject to the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. *Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004). Rule 9(b) requires that "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The applicable test for determining whether a Securities Act claim "sounds in fraud" is whether the complaint includes "wording and imputations . . . classically associated with fraud," such as allegations that a registration statement or prospectus "contained '*untrue* statements of material facts'" or that "'materially *false and misleading* written statements' were issued." *Rombach*, 355 F.3d at 172 (emphasis in original); *see also In re JP Morgan Chase Sec. Litig.*, 363 F. Supp. 2d 595, 635 (S.D.N.Y. 2005).

## I. PLAINTIFFS FAIL TO ALLEGE ANY ACTIONABLE MISSTATEMENTS OR OMISSIONS IN THE OFFERING DOCUMENTS

For the reasons set forth in the Barclays Defendants' Memorandum of Law, Plaintiffs' Securities Act claims should be dismissed because the Amended Complaint does not sufficiently allege that the Offering Documents contain any actionable misstatements or omissions.[5] (*See* Barclays Defendants' Memorandum of Law at Point I.) The Offering Documents adequately disclosed Barclays' mortgage and credit-related assets and Defendants did not, as Plaintiffs seem to allege, have a duty to disaggregate the separate categories of these assets. (*Id.* at Point I.B.) Moreover, many of Plaintiffs' allegations are nothing more than challenges to the subjective opinions of Defendants (*e.g.,* that Barclays carried its mortgage and credit-related assets on its

---

[5] To avoid unnecessary duplication, the Underwriter Defendants do not repeat in full the arguments set forth in the Barclays Defendants' Memorandum of Law.

9

financial statements at inflated values and waited too long to write down those assets). (*Id.* at Point I.C.) As this Court recently held, "subjective opinions – as opposed to statements of fact – are only actionable under the Securities Act if a complaint alleges that the speaker did not truly have the opinion at the time it was made public." *DLJ Mortgage Capital*, Order at 12. The Amended Complaint, however, contains no such allegations. (*See* Barclays Defendants' Memorandum of Law at Point I.C.)[6]

## II.  PLAINTIFFS LACK STANDING TO SUE UNDER SECTION 12(a)(2)

As this Court recently held in *DLJ Mortgage Capital*, to have standing to sue pursuant to Section 12(a)(2), a plaintiff must allege facts sufficient to demonstrate that it purchased securities in the public offerings at issue, and not in any secondary market. *See DLJ Mortgage Capital*, Order at 6-7; *see also Gustafson v. Alloyd Co.*, 513 U.S. 561, 578 (1995); *In re Alcatel Sec. Litig.*, 382 F. Supp. 2d 513, 530 n.8 (S.D.N.Y. 2005) ("Only those [p]laintiffs who purchased . . . shares pursuant to (i.e., in) the IPO have standing to bring [a] section 12(a)(2) claim.").

In support of their Section 12(a)(2) claims, Plaintiffs offer nothing more than boilerplate assertions that they "acquired the [Barclays] Securities issued pursuant or traceable to the [Offering Documents]." (Am. Compl. ¶¶ 18-21.) Conspicuously absent from the Amended Complaint is *any* allegation by Plaintiffs that they purchased the Barclays securities *in* the Offerings at issue rather than in the secondary market. Although Plaintiffs have submitted

---

[6]  In any event, allegations that Defendants knew in earlier periods that its credit market assets were being carried at inflated values – although entirely absent here – would necessarily sound in fraud, thereby requiring Plaintiffs to satisfy the stringent pleading requirements of Rule 9(b). *See Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004); *see also Ladmen Partners, Inc. v. Globalstar , Inc.*, No. 07 Civ. 0976 (LAP), 2008 WL 4449280, at *12 (S.D.N.Y. Sept. 30, 2008) (allegations that defendant had contrary knowledge when "reviewing and/or disseminating [allegedly] misleading statements and information" "sound in fraud"). Because Plaintiffs have failed to satisfy the pleading standards articulated by the Supreme Court in *Iqbal* and *Twombly* (*see* Barclays Defendants' Memorandum of Law at Point I.), they plainly cannot satisfy the heightened standards of Rule 9(b).

Certifications purportedly detailing their transactions in the Barclays securities at issue, those Certifications do not specify whether the securities were actually purchased *in* the subject Offerings.  Such conclusory and vague pleading is wholly insufficient to establish standing to assert a claim under Section 12(a)(2).  *See DLJ Mortgage Capital*, Order at 6-7 (dismissing Section 12 claim where complaint alleged "only that Plaintiff purchased [the subject securities] 'pursuant and traceable to' the Offering Documents"); *Caiafa v. Sea Containers Ltd.*, 525 F. Supp. 2d 398, 407 (S.D.N.Y. 2007) (dismissing Section 12(a)(2) claim where complaint did not allege that plaintiffs purchased shares in a public offering).

Because the Amended Complaint does not "allege that [Plaintiffs] purchased the securities in a public offering, as opposed to in the aftermarket," the fact that "[s]ome of the purchase dates listed in [Lead Plaintiffs' Certifications] are close enough in time to suggest that [they] could have made their purchases in the [Offerings]" is insufficient to save their Section 12(a)(2) claims.  *In re Sterling Foster & Co., Sec. Litig.*, 222 F. Supp. 2d 216, 245 (E.D.N.Y. 2002).  Moreover, the Certification submitted by Plaintiff Ettin makes clear that he did not purchase the Series 5 Securities in the April 2008 Offering.  According to his Certification, Ettin first purchased the Series 5 Securities on September 19, 2008, *more than five months after* the April 2008 Offering.  (Perrin Decl. Ex. E.)  In addition, while the Series 5 Securities were originally offered at $25.00 per share, Ettin purportedly purchased the securities for $20.0612 per share.  (*Id.*)

Finally, Plaintiffs' Section 12(a)(2) claims should be dismissed for the additional reason that Plaintiffs have failed to allege, as they must, that they directly purchased the securities at issue from a particular Underwriter Defendant or as a result of a particular Underwriter Defendant's solicitation.  *See In re Deutsche Telekom AG Sec. Litig.*, No. 00 CIV 9475 SHS,

11

2002 WL 244597, at *3 (S.D.N.Y. Feb. 20, 2002) (in order to qualify as a "seller" for Section 12(a)(2) liability, a plaintiff must allege a defendant "(1) passed title of the security to the plaintiff or (2) successfully solicited the purchase motivated at least in part by [its] own financial interest") (citing *Pinter v. Dahl*, 486 U.S. 622, 642 (1988)); *see also DeMaria v. Andersen*, 153 F. Supp. 2d 300, 307 (S.D.N.Y. 2001) (dismissing Section 12 claim against underwriter defendants because "the amended complaint [did] not aver that any defendant was the immediate seller to any named plaintiffs," or that any defendant "actively solicited any named plaintiff in connection with the sale" of the securities at issue), *aff'd*, 318 F.3d 170 (2d Cir. 2003).

### III. PLAINTIFFS HAVE FAILED TO SUFFICIENTLY ALLEGE A SECURITIES ACT CLAIM WITH REGARD TO THE APRIL 2008 OFFERING OF SERIES 5 SECURITIES

A plaintiff "may not recover under §§ 11 or 12(a)(2) if [he] knew of the alleged untruth or omission at the time of purchase." *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 441 (S.D.N.Y. 2001) (citing 15 U.S.C. §§ 77k(a) & 77*l*(a)(2)). "Knowledge that a misstatement or omission exists is sufficient to defeat a § 11 or 12(a)(2) claim; defendants need not demonstrate plaintiffs' actual knowledge of the truth." *Id.* (citation omitted).

Here, Plaintiff Ettin is the only named Plaintiff alleged to have purchased the Series 5 Securities issued in the April 2008 Offering. (Am. Compl. ¶ 21.) As previously stated, according to his Certification, Ettin allegedly purchased the Series 5 Securities on September 19, 2008. (Perrin Decl. Ex. E.) Nevertheless, Plaintiffs themselves allege that Barclays made "adequate disclosures of its capital credit market exposures" in its 2008 Interim Results, as of June 30, 2008, which were issued on August 7, 2008, more than one month prior to Ettin's

purchase of the Series 5 Securities.[7] (Am. Compl. ¶ 184.) Thus, at the time Ettin purchased the Series 5 Securities, he had knowledge of any alleged "untruths or omissions" in the Offering Documents. Plaintiffs' Securities Act claims regarding the April 2008 Offering of Series 5 Securities should, therefore, be dismissed. *See Livent*, 151 F. Supp. 2d at 441 (dismissing Section 11 and Section 12(a)(2) claims because plaintiffs were aware, prior to purchasing notes, that the registration statement contained misstatements); *see also, e.g.*, *In re Am. Int'l Group, Inc. Sec. Litig.*, No. 04 Civ. 8141 (DAB), 2010 WL 646720, at *8 (S.D.N.Y. Feb. 22, 2010) (holding that plaintiffs did not have standing to bring a Section 11 claim where they purchased securities despite "[knowing] that some or many of the statements contained in the Registration Statement were false when they relied on that Statement in purchasing the [subject securities]").[8]

---

[7] While Plaintiffs also allege that "certain vital disclosures were not made until the annual report as of December 31, 2008" (Am. Compl. ¶ 184), tellingly, the Amended Complaint does not provide a description of any such "vital disclosures."

[8] The Underwriter Defendants also specifically join in the Barclays Defendants' argument that Plaintiffs' claims with regard to the Series 2, 3, and 4 Securities are time-barred. (*See* Barclays Defendants' Memorandum of Law at Point III.)

## **CONCLUSION**

For the foregoing reasons, as well as those set forth in the Barclays Defendants' Memorandum of Law, the Underwriter Defendants respectfully request that Counts I and II of the Amended Complaint be dismissed in their entirety with prejudice.

Dated: New York, New York
April 19, 2010

                                      Respectfully submitted,

                                      /s/ Jay B. Kasner
                                      Jay B. Kasner
                                      (jay.kasner@skadden.com)
                                      Scott D. Musoff
                                      (scott.musoff@skadden.com)
                                      SKADDEN, ARPS, SLATE,
                                         MEAGHER & FLOM LLP
                                      Four Times Square
                                      New York, New York  10036
                                      (212) 735-3000

                                      Attorneys for the Underwriter Defendants