UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- x
In re BARCLAYS BANK PLC             :
SECURITIES LITIGATION               :    Master File No. 1:09-cv-01989 (PAC)
                                    :
This Document Relates To:           :
                                    :
    ALL ACTIONS                    :
                                    :
------------------------------------------------------- x


# REPLY MEMORANDUM OF LAW IN FURTHER
# SUPPORT OF THE BARCLAYS DEFENDANTS' MOTION
# TO DISMISS THE CONSOLIDATED AMENDED COMPLAINT


David H. Braff (DB-0761)
Michael T. Tomaino, Jr. (MT-6200)
Ryan C. Williams (RW-1275)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY  10004
(212) 558-4000 (Telephone)
(212) 558-3588 (Fax)

*Attorneys for the Barclays Defendants*

August 3, 2010

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ........................................................................................................1

ARGUMENT ..................................................................................................................................2

I. THE COMPLAINT DOES NOT ALLEGE ANY ACTIONABLE
MISSTATEMENTS OR OMISSIONS. .......................................................................2

    A. Barclays Had No Duty to Itemize Separately the Specific
Categories of Its Mortgage-Related Assets..............................................2

    B. The Complaint Fails to State a Claim Concerning Barclays'
Statements About the Value of Its Mortgage-Related Assets.................4

    C. The Challenged Statements Concerning Barclays' Risk
Management Policies Are Not Actionable ...............................................6

II. PLAINTIFFS' CLAIMS WITH RESPECT TO THE SERIES 2, 3
AND 4 OFFERINGS ARE TIME BARRED. ..............................................................7

III. LEAD PLAINTIFFS LACK STANDING UNDER SECTION
12(a)(2). ..........................................................................................................................9

CONCLUSION...............................................................................................................................10

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Dodd* v. *Cigna Sec., Inc.*,
    12 F.3d 346 (2d Cir. 1993) ................................................................................................8

*ECA and Local 134 IBEW Joint Pension Trust of Chi.* v. *JP Morgan Chase Co.*,
    553 F.3d 187 (2d. Cir. 2009) ..........................................................................................7, 8

*Fait* v. *Regions Financial Corp.*,
    No. 09 Civ. 3161 (LAK), 2010 WL 1883487 (S.D.N.Y. May 10, 2010) ........................4, 5

*Freudenberg* v. *E*Trade Fin. Corp.*,
    No. 07 Civ. 8538, 2010 WL 1904314 (S.D.N.Y. May 11, 2010) ................................1, 3, 6

*Ganino* v. *Citizen Utils. Co.*,
    228 F.3d 154 (2d Cir. 2000) ..............................................................................................8

*In re Ambac Fin. Group, Inc. Sec. Litig.*,
    693 F. Supp. 2d 241 (S.D.N.Y. 2010) ..............................................................................5, 6

*In re Citigroup, Inc. Bond Litig.*,
    No. 08 Civ 9522 (SHS), 2010 WL 2772439 (S.D.N.Y. July 12, 2010) ....................2, 3, 5, 10

*In re Converium Holding AG Sec. Litig.*,
    No. 04 Civ. 7897 (DLC), 2006 WL 3804619 (S.D.N.Y. Dec. 28, 2006) ...........................9

*In re Livent, Inc. Noteholders Sec. Litig.*,
    151 F. Supp. 2d 371 (S.D.N.Y. 2001) ................................................................................8

*In re JWP Inc. Sec. Litig.*,
    928 F. Supp. 1239 (S.D.N.Y. 1996) ..................................................................................9

*In re MBIA, Inc. Sec. Litig.*,
    No. 08-CV-264 (KMK), 2010 WL 1253925 (S.D.N.Y. Mar. 31, 2010) ........................2, 3

*In re Moneygram Int'l, Inc. Sec. Litig.*,
    626 F. Supp. 2d 947 (D. Minn. 2009) ................................................................................3

*In re New Century*,
    588 F. Supp. 2d 1206 (C.D. Cal. 2008) .............................................................................6

*In re RAIT Fin. Trust Sec. Litig.*,
    No. 2:07-cv-03148-LDD, 2008 WL 5378164 (E.D. Pa. Dec. 22, 2008) ............................6

## TABLE OF AUTHORITIES
(continued)

Page(s)

*In re Vivendi Universal, S.A. Sec. Litig.*,
    381 F. Supp. 2d 158 (S.D.N.Y. 2003) ........................................................................... 5, 6

*Merck & Co.* v. *Reynolds*,
    130 S. Ct. 1784 (2010) ................................................................................................... 7, 8

*New Jersey Carpenters Health Fund* v. *DLJ Mortgage Capital, Inc.*,
    No. 08 Civ. 5653 (PAC), 2010 WL 1473288 (S.D.N.Y. Mar. 29, 2010) ...................... 5

*Plumbers' Union Local No. 12 Pension Fund* v. *Nomura Asset Acceptance Corp.*,
    No. 08-10446-RGS, 2009 WL 3149775 (D. Mass. Sept. 30, 2009) ........................ 9, 10

*Public Employee Retirement Sys. of Mississippi* v. *Merrill Lynch & Co., Inc.*,
    No. 08 Civ. 10841(JSR), 2010 WL 2175875 (S.D.N.Y. June 1, 2010) ............... 8, 9, 10

*Rombach* v. *Chang*,
    355 F.3d 164 (2d Cir. 2004) ............................................................................................ 6

*Rubin* v. *MF Global, Ltd.*,
    634 F. Supp. 2d 459 (S.D.N.Y. 2009) ............................................................................. 7

**STATUTES**

15 U.S.C. § 77m ........................................................................................................................ 8

28 U.S.C. § 1658(b)(1) ............................................................................................................. 8

**PRELIMINARY STATEMENT**

Plaintiffs begin their opposition brief by quoting Judge Sweet's observation that the "collapse of the subprime mortgage and the housing markets . . . were widely recognized" by the fall of 2007, and many large financial institutions publicly announced "crippling write-downs of mortgage-related assets" in October 2007. (Pls. Opp. at 1 (quoting *Freudenberg* v. *E\*Trade Fin. Corp.*, No. 07 Civ. 8538, 2010 WL 1904314 (S.D.N.Y. May 11, 2010).) Plaintiffs then assert that "Barclays was clearly ***not*** taking crippling writedowns of its mortgage-related assets" during this period. (*Id.* (emphasis in original).) Plaintiffs' own Complaint, however, acknowledges that Barclays did, in fact, publicly announce *£1.5 billion* in write downs of its mortgage-related assets in November 2007. (*See* CAC ¶¶ 114-15; *see also* Perrin Decl. Ex. J.)[1] As the months progressed, and the financial crisis unfolded, Barclays announced additional write downs. (Perrin Decl. Exs. I, K and U.)

With the full benefit of hindsight, Plaintiffs claim that Barclays should have predicted, better and earlier, the breadth and depth of the unprecedented financial crisis. They complain, in essence, that Barclays did not write down the value of its mortgage-related assets as early (or as steeply) as other financial institutions did. Conspicuously absent from Plaintiffs' Complaint, however, are any non-conclusory allegations supporting an inference that Barclays' subjective asset valuations were false at the time they were made, or that Barclays did not, in fact, believe that those valuations were reasonable. Absent such allegations, the Complaint fails to state a claim under Sections 11 and 12(a)(2) of the Securities Act of 1933, and thus Section 15, as a matter of law. Moreover, because Plaintiffs delayed bringing suit for more than one year

---

[1] References herein to "Ex. __" are to exhibits to the Declaration of Christopher A. Perrin, dated April 19, 2010 ("Perrin Decl."), which was submitted with the Barclays Defendants' opening brief in support of their motion to dismiss. References to "CAC" are to Plaintiffs' Consolidated Amended Complaint, a copy of which is attached as Exhibit A to the Perrin Declaration.

after Barclays publicly disclosed the *very information* that Plaintiffs claim was actionably omitted from the Series 2, 3 and 4 ADS Offering Documents, their claims with respect to those Offerings are time barred.  The Complaint should be dismissed in its entirety, with prejudice.

## ARGUMENT

### I. THE COMPLAINT DOES NOT ALLEGE ANY ACTIONABLE MISSTATEMENTS OR OMISSIONS.

#### A. Barclays Had No Duty to Itemize Separately the Specific Categories of Its Mortgage-Related Assets.

The cases cited in Barclays' opening brief make clear that nothing in the federal securities laws imposes upon an issuer a duty to disclose granular detail concerning the specific composition of its mortgage portfolio.  (*See* Barclays' Opening Br. at 13-15.)  Plaintiffs' erroneous argument to the contrary relies principally upon two recent decisions from courts in this District—Judge Karas's decision in *In re MBIA, Inc. Sec. Litig.*, No. 08-CV-264 (KMK), 2010 WL 1253925 (S.D.N.Y. Mar. 31, 2010), and Judge Stein's decision in *In re Citigroup, Inc. Bond Litig.*, No. 08 Civ 9522 (SHS), 2010 WL 2772439 (S.D.N.Y. July 12, 2010).[2]  Plaintiffs claim that these decisions support an affirmative disclosure duty to "break[] out mortgage-related asset holdings, 'as distinct from the aggregate total of a multi-sector portfolio.'"  (Pls. Opp. at 19 (quoting *In re MBIA*, 2010 WL 1253925, at *10).)  Neither case supports such a duty.  Instead, each involved allegations—not present here—that the defendants' disclosures about certain categories of mortgage-related assets contained false statements.

In *MBIA*, the defendant had separately disclosed its holdings of "Multi-Sector CDOs with U.S. RMBS" and "other CDOs" in its financial reports, but plaintiffs alleged that a significant portion of the "other CDOs" were misclassified because they, in fact, "contain[ed]

---

[2] Plaintiffs' discussion of *Citigroup* appears in a July 19, 2010 letter to the Court, which Plaintiffs submitted after they filed their Opposition Brief.

RMBS." *In re MBIA*, 2010 WL 1253925, at *2, 10.  Similarly, in *Citigroup*, plaintiffs alleged that the defendant's offering materials falsely stated that "Citigroup had no direct exposure to subprime mortgage-backed CDOs" when, in fact, Citigroup allegedly "held nearly $30 billion in subprime backed CDOs and had guaranteed another $25 billion and a had a total of nearly $66 billion in direct CDO exposure."  2010 WL 2772439 at *3.

Thus, both cases merely stand for the unremarkable proposition that, once an issuer *voluntarily* undertakes to make disclosures about specific categories of assets, those disclosures must be accurate.  But nothing in either decision suggests that an issuer has an affirmative duty to make itemized disclosures about the various subcategories of mortgage-related assets that make up its overall portfolio.[3]  Indeed, in *Citigroup*, Judge Stein expressly *rejected* plaintiffs' Section 11 and 12(a)(2) claims predicated on Citigroup's alleged omission of details concerning its exposure to auction-rate securities because plaintiffs "identif[ied] neither an independent duty" to disclose such information, "nor any statement or statements that were 'misleading'" in the absence of information concerning those assets.  *Id*. at *23.  Here, Barclays made substantial disclosures regarding its aggregate holdings of mortgage-related assets, and it did not have a duty to break down and itemize those assets into separate subcategories.[4]

---

[3]   Nor do the other authorities Plaintiffs cite support the existence of such an obligation.  *See*, *e.g.*, *E*TRADE*, 2010 WL 1904314, at *8-9 (finding plaintiffs' non-disclosure claims sufficient based on allegations that defendants misrepresented that loans were "superprime" when many were not even "prime"); *In re Moneygram Int'l, Inc. Sec. Litig.*, 626 F. Supp. 2d 947, 974 (D. Minn. 2009) (allegations that defendant's accounting ledger remained open in violation of internal controls because of problems with accurately valuing its asset-backed securities, "permit[ted] an inference that defendants had access to valuation information contradicting [its] public financial statements").

[4]   Plaintiffs' reliance (Pls. Opp. at 21-22) on Item 503 of SEC Regulation S-K is misplaced.  Nothing in Item 503 requires granular disclosure of an issuer's separate subcategories of mortgage-related assets.  Here, Barclays fully complied with Item 503 by identifying various "Risk Factors" that might affect its business, including the possibility that an economic downturn or higher interest rates could affect the credit quality of Barclays' balance sheet and off-balance sheet assets.  (*See* Barclays' Opening Br. at 5-8, 13-14.)

### B. The Complaint Fails to State a Claim Concerning Barclays' Statements About the Value of Its Mortgage-Related Assets.

Barclays' opening brief (at 15-17) cited numerous decisions from courts in this District and elsewhere recognizing that asset valuation and write down decisions of the type challenged by Plaintiffs involve inherently subjective assessments of the future performance of highly illiquid assets. Now, Plaintiffs urge the Court to ignore those cases on the ground that they supposedly did not involve the "record[ing] [of] asset impairments," which Plaintiffs assert involves "an actionable statement of fact." (Pls. Opp. at 23-24.) But in a recent decision issued after Barclays filed its opening brief, Judge Kaplan specifically rejected such a distinction:

> [T]he goodwill reflected in the 2007 10-K was the excess of the acquisition price, an objective fact, over the fair value of AmSouth's assets at the time of the acquisition. *The fair value of those assets, the majority of which consisted of the value of AmSouth's loan portfolio, however, was not a matter of objective fact*. Those assets were not traded on the New York Stock Exchange or some other efficient market where the fair market value typically is the price at which a share or other asset is trading at any given moment. . . . Given the lack of any objective or readily determinable value for the AmSouth assets acquired in the acquisition, "the question of material falsity" of the stated goodwill "is whether the representation was false—not because the value [was] 'wrong' in some empirical sense, but because" the financial statement in the 10-K did not reflect management's "honest opinion."

*Fait* v. *Regions Financial Corp.*, No. 09 Civ. 3161 (LAK), 2010 WL 1883487, at *4 (S.D.N.Y. May 10, 2010) (emphasis added) (quoting *Fraternity Fund Ltd.* v. *Beacon Hill Asset Mgmt.*, *LLC*, 479 F. Supp. 2d 349, 361-63 (S.D.N.Y. 2007)). Because the plaintiffs in *Fait*, like Plaintiffs here, "specifically disclaim[ed] any . . . allegation" that defendant had knowingly or recklessly misstated the reported value of its goodwill, Judge Kaplan ruled that they failed to state a claim under Sections 11 and 12(a)(2). *Id.*

The *Fait* plaintiffs also argued that they did not have to plead defendants' knowledge of falsity because it is not an element of a Section 11 or 12(a)(2) claim. Judge Kaplan rejected that argument as "singularly unpersuasive" and as "conflict[ing] with abundant

-4-

case law in this Circuit." 2010 WL 1883487, at *5 n.55 (collecting cases). Plaintiffs here make the same argument, and this Court should reach the same result, just as it did in *New Jersey Carpenters Health Fund* v. *DLJ Mortgage Capital, Inc.*, No. 08 Civ. 5653 (PAC), 2010 WL 1473288 (S.D.N.Y. Mar. 29, 2010), where it held that "subjective opinions—as opposed to statements of fact—are only actionable under the Securities Act if a complaint alleges that the speaker did not truly have the opinion at the time it was made public." *Id.* at *7.[5]

The cases Plaintiffs cite (Pls. Opp. at 23-26) to argue that Barclays' subjective asset valuations and write down decisions are actionable are all distinguishable because the plaintiffs in those cases, unlike here, pleaded facts sufficient to support an inference that the defendants did not genuinely believe their opinion statements at the time they were made. For example, in *In re Ambac Fin. Group, Inc. Sec. Litig.*, 693 F. Supp. 2d 241 (S.D.N.Y. 2010), Judge Buchwald explicitly premised her denial of the defendants' motion to dismiss on the existence of allegations supporting "a strong inference of scienter in the actions of defendants." *Id.* at 271-73. Similarly, in *In re Vivendi Universal, S.A. Sec. Litig.*, 381 F. Supp. 2d 158 (S.D.N.Y. 2003), which Judge Kaplan described in *Fait* as "plainly . . . distinguishable," 2010 WL 1883487, at *4 n.45, the court found that the complaint supported a permissible inference that the defendant's former management knew its valuation decisions were unreasonable based on allegations that the company's new management took significant, unexplained write downs of assets immediately after taking control of the company. *See In re Vivendi,* 381 F. Supp. 2d. at

---

[5] The fact that Barclays later wrote down its mortgage-related assets does not support a permissible inference that its earlier asset valuations and write down decisions were known to be false (or even were objectively unreasonable) at the time they were made. As Judge Stein observed in *Citigroup*, "plaintiffs cannot 'reverse engineer[]' Section 11 claims by alleging '[what] only became clear [due] to subsequent events was somehow known to [defendant] far earlier in time.'" 2010 WL 2772439 at *21 (quoting *Panther Partners, Inc.* v. *Ikanos Comms., Inc.*, 538 F. Supp. 2d 662, 669 (S.D.N.Y. 2008) (Crotty, J.)).

176-77.[6]  Here, in contrast, Plaintiffs expressly disclaim *any* allegations "that could be construed as alleging . . . intentional or reckless misconduct."  (CAC ¶¶ 212, 223, 229.)[7]

### C. The Challenged Statements Concerning Barclays' Risk Management Policies Are Not Actionable.

Plaintiffs do not allege facts sufficient to support an inference that Barclays failed to comply with its own stated risk management policies or that those policies were deficient in any way.  (*See* Barclays' Opening Br. at 19-21.)  Moreover, the statements concerning risk management that Plaintiffs point to as allegedly misleading (*see*, *e.g.*, Pls. Opp. at 29-30) are so general and non-specific as to be immaterial as a matter of law.  *See*, *e.g.*, *ECA and Local 134 IBEW Joint Pension Trust of Chi.* v. *JP Morgan Chase Co.*, 553 F.3d 187, 205-06 (2d. Cir. 2009) (finding general descriptions concerning a defendant's risk management policies to be

---

[6]  *See also*, *e.g.*, *E*TRADE*, 2010 WL 1904314, at *18 ("As alleged in the Complaint, this is not a case of 'failure to predict' riskiness or future mortgage market downturns but [an] instance where loans were *internally known to be* of poor quality, inadequately reviewed, improperly described and highly risky at the time they were purchased.") (emphasis added); *In re RAIT Fin. Trust Sec. Litig.*, No. 2:07-cv-03148-LDD, 2008 WL 5378164, at *7 (E.D. Pa. Dec. 22, 2008) ("Plaintiffs make several factual allegations *supporting the conclusion that RAIT knew* about other-than-temporary impairments that would have been noted if RAIT was in compliance with GAAP.") (emphasis added); *In re New Century*, 588 F. Supp. 2d 1206, 1226-27, 1229-31 (C.D. Cal. 2008) (finding allegations sufficient where complaint alleged facts "depict[ing] a profound effort to mask New Century's declining loan performance" and "suggest[ing] misrepresentations that did not turn on the outcome of future events").

[7]  In addition to reflecting management's then-current, subjective opinions regarding the probable fair market value of its illiquid assets, Barclays' valuation statements also reflected forward-looking projections concerning the likely future performance of those assets.  Because Barclays explicitly identified these forward-looking statements as such in its ADS Offering Documents, and explicitly described the specific risks inherent in such projections, these statements are protected by the statutory "safe harbor" provision of the PSLRA and/or the judicially created "bespeaks caution" doctrine.  (*See* Barclays' Opening Br. at 17-19.)  Plaintiffs seek to characterize these forward-looking statements as statements of existing fact that are ineligible for such protection (Pls. Opp. at 26-29), but the very authorities they cite refute their argument.  *See*, *e.g.*, *Rombach* v. *Chang*, 355 F.3d 164, 172-74 (2d Cir. 2004) (bespeaks caution doctrine protects optimistic statements concerning integration of facilities following recently completed merger); *In re Ambac*, 693 F. Supp. 2d at 281 (financial statements based on projections concerning "the value of Ambac's mark-to-market losses and credit impairments" were forward-looking statements protected by bespeaks caution doctrine).

immaterial and non-actionable as a matter of law); *Rubin* v. *MF Global, Ltd.*, 634 F. Supp. 2d 459, 472-73 (S.D.N.Y. 2009) (same).

Plaintiffs attempt to distinguish these authorities by asserting that Barclays' risk management descriptions were designed to "differentiate[]" Barclays by "assuring" investors that its risk management policies would cause it to "outperform" its competitors. (*See* Pls. Opp. at 32 n.33.) But Plaintiffs do not point to a single concrete assertion anywhere in Barclays' public filings that either directly compared Barclays' risk management policies to those of its competitors or that "assured" investors that its policies would enable it to avoid write downs. Instead, Barclays specifically cautioned investors that its risk management policies were not guarantees against loss and that it was neither possible nor desirable to eliminate business risk completely. (*See*, *e.g.*, Perrin Decl. Ex. G at 29, 58; *id.* Ex. H at 60, 86.) Plaintiffs have thus identified no plausible basis for distinguishing Barclays' risk-management statements from the substantially similar descriptions found to be non-actionable as a matter of law in the decisions cited in Barclays' opening brief.

## II. PLAINTIFFS' CLAIMS WITH RESPECT TO THE SERIES 2, 3 AND 4 OFFERINGS ARE TIME BARRED.

Plaintiffs urge the Court to ignore settled Second Circuit precedent interpreting Section 13 of the Securities Act, the limitations provision applicable to their Section 11, 12 and 15 claims, contending that the Supreme Court "recently rejected the 'inquiry notice' standard" in *Merck & Co.* v. *Reynolds*, 130 S. Ct. 1784 (2010). (Pls. Opp. at 12.) The *Merck* case, however, did not involve Securities Act claims. Instead, it addressed the "inquiry notice" standard for purposes of the statute of limitations applicable to claims under Section 10(b) of the Securities

Exchange Act of 1934.[8]  As Judge Rakoff recently observed, "the Second Circuit has not yet had occasion to determine whether *Merck* requires" any change in how Section 13 of the Securities Act is interpreted.  *Public Employee Retirement Sys. of Mississippi* v. *Merrill Lynch & Co., Inc.*, No. 08 Civ. 10841(JSR), 2010 WL 2175875, at *2 (S.D.N.Y. June 1, 2010); *cf. Dodd* v. *Cigna Sec., Inc.*, 12 F.3d 346, 349-50 (2d Cir. 1993) (holding that one-year limitations period under Section 13 begins to run when plaintiff acquires *either* actual notice or inquiry notice).

Nevertheless, even under the "inquiry notice" standard articulated in *Merck* for Section 10(b) claims, Plaintiffs' claims here would still be time barred because Barclays' November 2007 and February 2008 disclosures publicly revealed the *very information* that Plaintiffs claim should have been disclosed in connection with the Series 2, 3 and 4 Offerings—namely, detailed information concerning Barclays' exposure to particular categories of mortgage-related assets.  (*See* Barclays' Opening Br. at 23-25.)[9]  In view of these specific public

---

[8]   The *Merck* decision addressed when claims for securities fraud under Section 10(b) of the Exchange Act accrue under 28 U.S.C. § 1658(b)(1), which provides that such claims must be brought no later than "2 years after the discovery of the facts constituting the violation."  The Court emphasized this language in rejecting the "inquiry notice" standard for which the defendant had argued, observing that "[n]othing in the text [of the statute] suggests that the limitations period can sometimes begin *before* 'discovery' can take place."  *Merck*, 130 S. Ct. at 1797.  Section 13, by contrast, provides that Securities Act claims are barred "unless brought within one year after the discovery of the untrue statement or the omission, *or after such discovery should have been made by the exercise of reasonable diligence*."  15 U.S.C. § 77m (emphasis added).

[9]   Plaintiffs contend that Barclays' November 17, 2007 "trading update" was not separately and specifically identified in the Series 4 Offering Documents and should therefore be ignored for purposes of the Series 4 Offering.  (Pls. Opp. at 8 n.5.)  This argument, however, does not change the fact that the trading update started the one-year clock running on the statute of limitations applicable to Plaintiffs' claims.  But Plaintiffs' argument is erroneous in any event because the trading update was issued *before* the Series 4 Offering and expressly stated that it was incorporated by reference into the August 31, 2007 F-3 Shelf Registration Statement, one of the Series 4 Offering Documents.  (*See* Barclays' Opening Br. at 7 n.5.)  And even if the trading update was not part of the Series 4 Offering Documents, Barclays' public disclosure of the information contained in that trading update would render the omission of such information in the Series 4 Offering Documents immaterial as a matter of law.  *See*, *e.g.*, *Ganino* v. *Citizen Utils. Co.*, 228 F.3d 154, 167 (2d Cir. 2000) (misrepresentation is immaterial if the information is already known to the market); *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 441 (S.D.N.Y. 2001) (misstatements not actionable under §§ 11 and 12 where truth was disclosed).

disclosures, a "reasonably diligent plaintiff" would *in fact* have discovered the information Plaintiffs allege was actionably omitted from the Series 2, 3 and 4 Offerings, because that information was clearly stated on the face of Barclays' own subsequent public filings. Thus, plaintiffs' reliance (Pls. Opp. at 12) on Judge Rakoff's ruling that inquiry notice was not triggered in *Merrill Lynch* is inapposite here, because "virtually none of" of the public materials cited by defendants in that case concerning mortgage-backed securities in general referenced Merrill Lynch or the securities in question. *Merrill Lynch*, 2010 WL 2175875, at *2.[10]

### III. LEAD PLAINTIFFS LACK STANDING UNDER SECTION 12(a)(2).

Plaintiffs argue that they have adequately alleged Section 12(a)(2) standing by pleading that they "purchased the Securities pursuant to the Prospectuses," and because their certifications show purchases on dates near the Offerings and at the Offering prices. (Pls. Opp. at 34.) This is insufficient as a matter of law to support Section 12(a)(2) standing. If Plaintiffs had, in fact, purchased securities *in* the Offerings and *from* one of the Defendants—both of which are required for standing under Section 12(a)(2)—then it would have been easy enough for them to plead those facts in the Complaint. Their failure to do so requires dismissal of their claims. *See*, *e.g.*, *Plumbers' Union Local No. 12 Pension Fund* v. *Nomura Asset Acceptance Corp.*, No. 08-10446-RGS, 2009 WL 3149775, at *4 (D. Mass. Sept. 30, 2009) ("If plaintiffs did

---

[10] In an attempt to rescue their time-barred claims, Plaintiffs contend that Barclays' November 2007 and February 2008 disclosures did not place them on notice because those disclosures were purportedly accompanied by words of "comfort" or "reassurance." (Pls. Opp. at 13-15.) But the purportedly "reassuring" words Plaintiffs point to did nothing to change the concrete historical information concerning the specific holdings in Barclays' mortgage portfolio at the time of the Series 2, 3 and 4 Offerings. *See*, *e.g.*, *In re Converium Holding AG Sec. Litig.*, No. 04 Civ. 7897 (DLC), 2006 WL 3804619, *16-17 (S.D.N.Y. Dec. 28, 2006) (defendant's increase of reserve charges put plaintiffs on notice regarding claims of misstatement of reserve amounts despite management's contemporaneous reassurances to investors that "the company's business remained strong"); *In re JWP Inc. Sec. Litig.*, 928 F. Supp. 1239, 1249-50 (S.D.N.Y. 1996) (defendant's disclosure that it was restating earnings put plaintiffs on notice despite management's contemporaneous assurances that the company was "well positioned for earnings growth as the economy recovers" and that its "financial position [was] strong").

in fact purchase the Certificates directly from the defendants, they should have said so. An evasive circumlocution does not suffice as a substitute."). As Judge Stein ruled in *Citigroup*, to establish Section 12(a)(2) standing, a plaintiff "must identify a particular purchase from a particular defendant pursuant to a particular prospectus . . . . Failing to do so fails to meet even the lessened pleading requirements of Rule 8 . . . ." 2010 WL 2772439, at *15 (citing *In re Sterling Foster & Co. Sec. Litig.*, 222 F. Supp. 2d 216, 246 (E.D.N.Y. 2002) (dismissing claims for lack of standing even though plaintiffs' dates of purchase suggested that purchases may have been in the offering)); *see also Merrill Lynch*, 2010 WL 2175875, at *6 (holding that "[e]ven under the modest requirements of Rule 8(a)," it is "insufficient to allege standing for purposes of a Section 12(a)(2) claim" by simply asserting that plaintiffs purchased securities "pursuant and/or traceable" to the offering documents).[11]

## CONCLUSION

For the foregoing reasons, and for those set forth in the Barclays Defendants' Opening Brief and in the Underwriter Defendants' Opening and Reply Briefs, the Court should grant the Barclays Defendants' motion and dismiss the Consolidated Amended Complaint in its entirety, with prejudice.

---

[11] The Complaint also fails to establish standing with respect to *any* of the Series 5 claims asserted by Lead Plaintiff Martin Ettin because his purchases were made *after* the public disclosure of all material facts that he alleges were omitted from the Series 5 Offering Documents. (*See* Underwriter Defendants' Reply Br. at Section III.)

Dated: New York, New York
August 3, 2010

                            Respectfully submitted,

                            /s/  David H. Braff
                            David H. Braff (DB-0761)
                            Michael T. Tomaino, Jr. (MT-6200)
                            Ryan C. Williams (RW-1275)
                            SULLIVAN & CROMWELL LLP
                            125 Broad Street
                            New York, NY  10004
                            (212) 558-4000 (Telephone)
                            (212) 558-3588 (Fax)

                            *Attorneys for the Barclays Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that, on August 3, 2010, I caused a true and correct copy of the foregoing Reply Memorandum of Law in Further Support of the Barclays Defendants' Motion to Dismiss the Consolidated Amended Complaint to be served on all counsel of record by filing the same with the Court's Electronic Filing System.

                                                                               /s/ Ryan C. Williams
                                                            Ryan C. Williams (RW-1275)