UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x
In re BARCLAYS BANK PLC        :
SECURITIES LITIGATION        :    Master File No. 1:09-cv-01989 (PAC)
        :
This Document Relates To:        :
        :
    ALL ACTIONS        :
        :
-------------------------------------------------------x


# REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE SECOND CONSOLIDATED AMENDED COMPLAINT

Jay B. Kasner (*jay.kasner@skadden.com*)
Scott D. Musoff (*scott.musoff@skadden.com*)
Gary J. Hacker (*gary.hacker@skadden.com*)
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
Four Times Square
New York, New York  10036
(212) 735-3000 (Telephone)
(212) 735-2000 (Fax)

*Attorneys for the Underwriter Defendants*

David H. Braff (*braffd@sullcrom.com*)
Michael T. Tomaino, Jr. (*tomainom@sullcrom.com*)
M. David Possick (*possickmd@sullcrom.com*)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
(212) 558-4000 (Telephone)
(212) 558-3588 (Fax)

*Attorneys for the Barclays Defendants*

January 13, 2014

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ........................................................................................................ ii

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT.................................................................................................................................2

I.     THE SCAC SHOULD BE DISMISSED AS BARRED BY THE MANDATE
RULE AND FOR VIOLATING RULE 8 OF THE FEDERAL RULES...........................2

II.    THIS CASE CANNOT PROCEED UNTIL NEW LEAD PLAINTIFFS ARE
APPOINTED PURSUANT TO THE PSLRA.....................................................................4

III.   ALL SERIES 5 CLAIMS RELATING TO RISK MANAGEMENT
STATEMENTS, ITEMIZATION AND ALLEGED NON-COMPLIANCE WITH
ACCOUNTING STANDARDS AND SEC REGULATIONS SHOULD BE
DISMISSED .......................................................................................................................5

        A.     The SCAC Does Not Adequately Plead Any Actionable Misstatement
Regarding Barclays' Risk Management Program.....................................................7

        B.     The SCAC Does Not Adequately Plead Any Actionable Failure to Itemize
Sub-Categories of Barclays' Mortgage-Related Assets............................................8

        C.     The SCAC Does Not Adequately Plead Any Actionable Misstatement
Based on Alleged Non-Compliance with Accounting Standards or SEC
Regulations .............................................................................................................9

IV.   THE NEW NAMED PLAINTIFFS LACK SECTION 12(a)(2) STANDING ..................10

CONCLUSION............................................................................................................................10

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Ambac Financial Group, Inc. Securities Litigation*,
    693 F. Supp. 2d 241 (S.D.N.Y. 2010)..................................................................................7

*In re Bear Stearns Cos., Inc. Securities, Derivative, and ERISA Litigation*,
    763 F. Supp. 2d 423 (S.D.N.Y. 2011).................................................................................7

*In re Citigroup. Inc. Bond Litigation*,
    723 F. Supp. 2d 568 (S.D.N.Y. 2010).............................................................................9, 10

*Copantitla* v. *Fiskardo Estiatorio, Inc.*,
    788 F. Supp. 2d 253 (S.D.N.Y. 2011)..................................................................................4

*Freidus* v. *Barclays Bank PLC*,
    734 F.3d 132 (2d Cir. 2013)................................................................. *passim*

*In re General Electric Co. Securities Litigation*,
    857 F. Supp. 2d 367 (S.D.N.Y. 2012)..................................................................................9

*Hevesi* v. *Citigroup Inc.*,
    366 F.3d 70 (2d Cir. 2004)............................................................................................. 4-5

*Illiano* v. *Mineola Union Free School District*,
    585 F. Supp. 2d 341 (E.D.N.Y. 2008) ................................................................................4

*In re Initial Public Offering Securities Litigation*,
    214 F.R.D. 117 (S.D.N.Y. 2002) .........................................................................................5

*Lapin* v. *Goldman Sachs Group, Inc.*,
    506 F. Supp. 2d 221 (S.D.N.Y. 2006)..................................................................................7

*In re Lehman Brothers Securities and Erisa Litigation*,
    799 F. Supp. 2d 258 (S.D.N.Y. 2011)..................................................................................7

*Leutwyler* v. *Royal Hashemite Court of Jordan*,
    184 F. Supp. 2d 303 (S.D.N.Y. 2001)..................................................................................3

*In re MBIA, Inc. Securities Litigation*,
    700 F. Supp. 2d 566 (S.D.N.Y. 2010)...............................................................................7, 9

*In re MF Global Holdings Limited Securities Litigation*,
    No. 11 Civ. 7866 (VM), 2013 WL 5996426 (S.D.N.Y. Nov. 12, 2013) ................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**
(*continued*)

*In re NYSE Specialists Securities Litigation*,
240 F.R.D. 128 (S.D.N.Y. 2007) ...................................................................................5

*In re Refco, Inc. Securities Litigation*,
503 F. Supp. 2d 611 (S.D.N.Y. 2007)............................................................................9

*Tin Pan Apple, Inc.* v. *Miller Brewing Co., Inc.*,
737 F. Supp. 826 (S.D.N.Y. 1990)................................................................................4

*In re UBS AG Securities Litigation*,
No. 07 Civ. 11225 (RJS), 2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012)......................4, 5, 10

*Vassilatos* v. *Ceram Tech International Ltd.*,
No. 92 Civ. 4574 (PKL), 1993 WL 177780 (S.D.N.Y. May 19, 1993)...................................4

*Zirkin* v. *Quanta Capital Holdings Ltd.*,
No. 07 Civ. 851 (RPP), 2009 WL 185940 (S.D.N.Y. Jan. 23, 2009)........................................6

## PRELIMINARY STATEMENT

Plaintiffs' Opposition ("Opp.") acknowledges that the Second Circuit authorized the filing of an amended complaint solely "with respect to the Series 5 Offering" and "with a new Lead Plaintiff." (Opp. at 17 (quoting *Freidus* v. *Barclays Bank PLC*, 734 F.3d 132, 142 (2d Cir. 2013).) The Opposition nevertheless does not dispute—nor could it—that the SCAC (a) still asserts claims with respect to the Series 2, 3 and 4 Offerings that are out of the case, (b) still purports to be brought by the same three original Lead Plaintiffs (Freidus, Mahboubi and the Thompsons) who no longer have any claims at all, and (c) does not include any new (or viable) Lead Plaintiffs because no one moved to substitute named plaintiffs Fait and Askelson as Lead Plaintiffs. The Opposition also concedes that no basis existed to assert Series 5 claims in the SCAC against Individual Defendants Mr. Barrett and Mr. Kheraj because they were no longer directors at the time of that Offering, but suggests that this was somehow permissible because those individuals "never bothered to ask" plaintiffs to dismiss them. (Opp. at 21 n.22.)

Plaintiffs have flouted the Second Circuit's decision and Mandate and the Federal Rules. They admit that the SCAC is identical to the Proposed SCAC they submitted to this Court with their motion for reconsideration in February 2011, long before filing their appeal to the Second Circuit. (Opp. at 5 n.5.) At that time, plaintiffs stated that the "Proposed SCAC amends only those deficiencies the Order identified with respect to the Series 5 Offering," but still included the Series 2, 3 and 4 allegations and claims "to preserve their rights." (Dkt. # 58 at 1.) After the Second Circuit's decision, however, plaintiffs have no rights to preserve with respect to Series 2, 3 and 4, and the original Lead Plaintiffs have no claims at all, which is why the Second Circuit permitted the filing of an amended complaint only "with respect to the Series 5 Offering" and "with a new Lead Plaintiff." *Freidus*, 734 F.3d at 142. And, although plaintiffs say that they are not "pursuing claims regarding" Series 2, 3 and 4 (SCAC ¶ 1 n.1), the SCAC

remains an operative pleading that *asserts* such claims—without any Rule 11 basis—to which

Defendants must respond under the Federal Rules.  The Court should dismiss the SCAC and

direct plaintiffs, if they wish to proceed with this action, to move to substitute Fait and Askelson

as new Lead Plaintiffs and file an amended complaint asserting only Series 5 claims.

Further, any such amended pleading should be limited to a Section 11 claim based

on opinion statements in the Series 5 Offering Documents concerning valuations of mortgage-

related assets.  Contrary to plaintiffs' assertion, the Second Circuit did not even discuss, let alone

reinstate, their claims relating to risk management and non-compliance with accounting

standards, which this Court properly dismissed with prejudice.  Those claims still fail as a matter

of law, as well as any claim alleging a failure to itemize the categories of Barclays' mortgage-

related assets.  And the Section 12 claim should also be dismissed with prejudice because the

SCAC does not allege that Fait or Askelson purchased Series 5 shares from any defendant.

**ARGUMENT**

**I. THE SCAC SHOULD BE DISMISSED AS BARRED BY THE MANDATE RULE AND FOR VIOLATING RULE 8 OF THE FEDERAL RULES.**

Plaintiffs' excuses for including allegations and claims in the SCAC with respect

to the Series 2, 3 and 4 Offerings, in violation of the Second Circuit's decision and Mandate and

Rule 8 of the Federal Rules (Opp. at 21-25), do not pass muster.  *First*, plaintiffs incorrectly

argue that they "properly filed the virtually identical SAC" that "was reviewed and approved by

the Second Circuit."  (Opp. at 21.)  The Second Circuit did not "approve" the filing of a pleading

that reasserted the same Series 2, 3 and 4 claims whose dismissal it affirmed with prejudice.

Instead, it only permitted the filing of an amended complaint "with respect to the Series 5

Offering" and "with a new Lead Plaintiff."  *Freidus*, 734 F.3d at 141.  The SCAC violates these

directives.

*Second*, plaintiffs assert that the Series 2, 3 and 4 allegations merely "provide necessary context and background to plaintiffs' Series 5 Offering claims." (Opp. at 25.) That is a gross mischaracterization. The Series 2, 3 and 4 allegations pervade the SCAC, which even pleads causes of action based on those dismissed offerings. These allegations and claims are prejudicial and improper, and violate the Mandate Rule and Rule 8, for several reasons:

- *Dismissed Claims*. The Counts explicitly seek to hold Defendants liable for statements made in connection with the Series 2, 3 and 4 Offerings. (*See* SCAC ¶¶ 238, 248.)

- *Definition of the Putative Class*. The SCAC proposes a class of "all persons who acquired preferred securities pursuant or traceable to the materially false and misleading Registration Statements and Prospectuses" in the Series 2, 3, 4 and 5 Offerings. (SCAC ¶ 1.)

- *Individual Defendants*. The SCAC asserts claims against Individual Defendants Mr. Barrett and Mr. Kheraj, even though the SCAC's own allegations make it clear that neither one signed the registration statement for the Series 5 Offering and both had resigned as Barclays Directors long before the Series 5 Offering. (*See* SCAC ¶¶ 36-37.)

- *Lead Plaintiffs*. The original Lead Plaintiffs seek to represent the putative class, even though they purchased only Series 2, 3 and 4 shares and thus have no claims. (*See* SCAC ¶¶ 19-21.)

- *The Substantive Allegations*. The SCAC is littered with almost 100 paragraphs that relate solely to the dismissed Series 2, 3 and 4 claims. (*See, e.g.*, SCAC ¶¶ 80-131, 156-181.)

*Third*, plaintiffs argue that "the SAC's inclusion of these background allegations is firmly grounded in the law," but the cases they cite are unavailing. (Opp. at 22.) Indeed, the case on which they most heavily rely, *Leutwyler* v. *Royal Hashemite Court of Jordan*, 184 F. Supp. 2d 303 (S.D.N.Y. 2001), highlights why plaintiffs must file a new complaint that includes only the remaining Series 5 claims. In *Leutwyler*, the court agreed with defendants that the complaint's allegations concerning dismissed claims were unnecessary and irrelevant, but denied a motion to strike them because it was "difficult to see what difference it makes at this stage of the litigation whether the allegations remain or not." *Id*. at 310. The court was careful to point out that no discovery would be permitted with respect to the dismissed matters, and that it would entertain a renewed motion to strike or redact those allegations to avoid any prejudicial impact on the presentation of evidence at trial. *Id*. The same discovery limitations and striking of

dismissed allegations is also appropriate here, at the very minimum. But the SCAC also includes

*claims* without basis, was filed in direct violation of the Second Circuit decision and Mandate,

and muddles together substantive allegations as to dismissed offerings and Series 5 in an

improper attempt to buttress the Series 5 claims (which is particularly prejudicial here because,

as even the SCAC reflects, Barclays' disclosures increased prior to the Series 5 Offering).[1]

   *Finally*, plaintiffs complain that filing "yet another amended complaint does

nothing but create unreasonable delay and waste the Court's and the parties' time and resources."

(Opp. at 22.) However, it is plaintiffs' decision to file an amended complaint violating the

Second Circuit's Mandate that has caused delay and unnecessary expenditure of resources.

## II. THIS CASE CANNOT PROCEED UNTIL NEW LEAD PLAINTIFFS ARE APPOINTED PURSUANT TO THE PSLRA.

   The original Lead Plaintiffs (Freidus, Mahboubi and the Thompsons) cannot

continue as Lead Plaintiffs under the PSLRA because they have no claims left in this case, and

therefore lack standing to proceed, having only purchased Series 2, 3 and 4 shares. *See In re*

*UBS AG Sec. Litig.*, 2012 WL 4471265, at *25 (S.D.N.Y. Sept. 28, 2012) ("'if none of the

named plaintiffs purporting to represent a class establishes the requisite of a case or controversy

with the defendants, none may seek relief on behalf of himself or any other member of the

class'") (citation omitted) (collecting cases). Plaintiffs correctly note (Opp. at 18) that the

---

[1]  Plaintiffs' other cases are no more helpful to them. Two cases merely held that allegations with independent relevance to elements of remaining claims should not be stricken. *See Illiano* v. *Mineola Union Free Sch. Dist.*, 585 F. Supp. 2d 341, 357 (E.D.N.Y. 2008) (dismissed allegations "are self-evidently material because they relate to the Plaintiff's surviving gender-based hostile work environment claim and her retaliation claims"); *Vassilatos* v. *Ceram Tech Int'l Ltd.*, 1993 WL 177780, at *3 (S.D.N.Y. May 19, 1993) (dismissed claim was relevant as predicate acts for RICO claim). Another case did not even involve any dismissed claims, but rather was a denial of a motion to dismiss and to strike. *Tin Pan Apple, Inc.* v. *Miller Brewing Co., Inc.*, 737 F. Supp. 826, 839 (S.D.N.Y. 1990). And in *Copantitla* v. *Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 308 (S.D.N.Y. 2011), the court denied a motion to strike that asserted only in "conclusory fashion" that the allegations related solely to a withdrawn claim.

Second Circuit in *Hevesi* v. *Citigroup Inc.* observed that "the PSLRA does not in any way prohibit the addition of named plaintiffs to aid the lead plaintiff in representing a class" because "it is inevitable that, in some cases, the lead plaintiff will not have standing to sue on *every* claim." 366 F.3d 70, 83 (2d Cir. 2004) (emphasis added). But that is not helpful here because *none* of the original Lead Plaintiffs has standing to sue on *any* claim left in the case.[2]

Plaintiffs also argue that the Second Circuit "instructed the Court-appointed Lead Plaintiffs (and Messrs. Fait and Askelson) to proceed with the claims set forth in the PSAC." (Opp. at 17.) Not so. The Second Circuit only permitted an amended complaint "with respect to the Series 5 Offering" and "with a new Lead Plaintiff." *Freidus*, 734 F.3d at 142. The Second Circuit obviously did not authorize the original Lead Plaintiffs to continue in that capacity when they have no claims, because it would be contrary to law for them to do so. *See In re UBS AG*, 2012 WL 4471265, at \*25. The formal withdrawal of the original Lead Plaintiffs and substitution of Fait and Askelson as new Lead Plaintiffs is required. *See In re NYSE*, 240 F.R.D. at 134 (it is "lead plaintiffs' responsibility to propose their own withdrawal and substitution should it be discovered that they may no longer adequately represent the interests of the" class).

## III.   ALL SERIES 5 CLAIMS RELATING TO RISK MANAGEMENT STATEMENTS, ITEMIZATION AND ALLEGED NON-COMPLIANCE WITH ACCOUNTING STANDARDS AND SEC REGULATIONS SHOULD BE DISMISSED.

The SCAC fails to state a claim with respect to the alleged misrepresentations in the Series 5 Offering Documents concerning (a) Barclays' risk management program,

---

[2]     Plaintiffs falsely accuse Defendants of "tak[ing] this four-year-old case back to square one by requiring plaintiffs to . . . engage in a second lead plaintiff appointment process." (Opp. at 1.) However, "since all putative class members were given notice of the opportunity to move for appointment as lead plaintiff by the original motion, there is no need for the Court to re-open the process by ordering a new notice and motion period." *In re NYSE Specialists Sec. Litig.*, 240 F.R.D. 128, 143 (S.D.N.Y. 2007). But Fait and Askelson still must be formally substituted as new Lead Plaintiffs. *See id*. at 131-35; *In re Initial Pub. Offering Sec. Litig.*, 214 F.R.D. 117, 120-22 (S.D.N.Y. 2002).

(b) itemization of mortgage-related assets or (c) alleged non-compliance with international accounting standards and SEC regulations. (*See* Opening Br. at 19-24.)[3] Plaintiffs' primary argument in response—that "the Second Circuit reinstated" plaintiffs' Series 5 claims "***in their entirety***" and "remanded this action so that plaintiffs could proceed with their Securities Act '***claims***' related to Barclays' Series 5 Offering" (Opp. at 9 (emphasis in original))—is a baseless attempt to shield their deficient Series 5 allegations from the pleading requirements of Rule 12(b)(6). The Second Circuit found no error with any aspect of this Court's Dismissal Order, but rather held that the "district court erred in denying leave to amend" because, subsequent to the Dismissal Order, "this Court decided *Fait* v. *Regions Fin. Corp.*, . . . holding that allegations of disbelief of subjective opinions could be brought under §§ 11 and 12(a)(2) in certain circumstances." *Freidus*, 734 F.3d at 135. As the Second Circuit explained, "[w]e agree with the district court that the original complaint contained no such allegations" that "Barclays did not truly believe its own valuation," but "[b]ased on our supervening decision in *Fait*, we conclude that the district court erred in stating that claims of disbelief of subjective opinions must necessarily be brought as fraud claims." *Id*. at 140-41. As a result, the Second Circuit revived only the claim challenging the opinion statements in the Series 5 Offering Documents concerning valuation of mortgage-related assets. Plaintiffs' allegations concerning itemization, risk management and non-compliance with accounting standards or SEC regulations should thus

---

3       The Section 11 claim against Barclays PLC, the holding company parent of Barclays, should be dismissed because the SCAC fails to allege any of the required facts against it. Plaintiffs assert—without any support—that the Section 11 claim is proper because "statements by Barclays PLC reflecting the Company's improper financial reporting were referenced and incorporated in the Series 5 Offering Documents." (Opp. at 21 n.22.) Under Section 11, however, only an issuer, a signer of the registration statement, a director of the issuer or an underwriter can be sued, and Barclays PLC was none of those. *Zirkin* v. *Quanta Capital Holdings Ltd.*, 2009 WL 185940, at *9 (S.D.N.Y. Jan. 23, 2009). All claims against Messrs. Barrett and Kheraj should also be dismissed, as plaintiffs now concede, because they "did not participate in the Series 5 Offering [and] are not implicated by plaintiffs' claims." (Opp. at 21 n.22.)

be dismissed in accordance with the undisturbed holdings in the Dismissal Order.[4]

A.     **The SCAC Does Not Adequately Plead Any Actionable Misstatement Regarding Barclays' Risk Management Program.**

As demonstrated in Defendants' Opening Brief (at 20-22), the only specific risk management statements alleged to be misleading are from the *Series 3* Offering Documents.  In response, plaintiffs point to one statement in Barclays' 2007 20-F in which "Barclays extolled, *inter alia*, its active management of its credit exposures, and its strategy of 'manag[ing] the diversification of its portfolio to avoid unwanted credit risk concentration.'"  (Opp. at 13 (quoting SCAC ¶ 192).)  This generic statement—especially when coupled with the cautionary language included in the Series 5 Offering Documents (Opening Br. at 21 & n.15)—is not actionable for the same reasons the Court dismissed those allegations before.[5]

Moreover, plaintiffs' risk management claim separately fails under Second Circuit law because "characterization of [the issuer's] risk-management procedures as effective . . .

---

[4]     Indeed, other than a "reference . . . when describing plaintiffs' claims" (Opp. at 10), the Second Circuit never discussed claims relating to risk management and alleged non-compliance with accounting standards, let alone disagreed with this Court's holding that those claims failed under Rule 12(b)(6). Similarly, the Second Circuit discussed the appropriate standard to apply to an itemization claim, but did not address whether plaintiffs adequately pled such a claim.  *See Freidus*, 734 F.3d at 140 n.3.

[5]     Plaintiffs' cases (Opp. at 13-14) are entirely inapposite.  *First*, the two cases on which plaintiffs principally rely demonstrate how deficient their risk-management allegations are here.  *See In re Bear Stearns Cos., Inc. Sec., Der., & ERISA Litig.*, 763 F. Supp. 2d 423, 489-90 (S.D.N.Y. 2011) ("statements about Bear Stearns' risk management functions and its use of valuation and risk models" actionable because "Bear Stearns knew that by October of 2007 its entire model review department had 'evaporated,'" that its "valuation and VaR models were seriously flawed and that the models were never updated to reflect the housing and subprime mortgage downturn"); *In re Lehman Bros. Sec. & ERISA Litig.*, 799 F. Supp. 2d 258, 284-85 (S.D.N.Y. 2011) (allegations that "Lehman 'routinely' overruled and disregarded its risk policy limits on the company's total risk appetite and its balance sheet, concentration, and single transaction limits . . . permit[ted] the inference that . . . statements to the effect that Lehman had 'strong' and 'conservative' risk management were false").  No similar allegations are made here. *Second*, plaintiffs' other cases did not even involve alleged misstatements about risk management.  *See In re Ambac Fin. Grp., Inc. Sec. Litig.*, 693 F. Supp. 2d 241, 270-71 (S.D.N.Y. 2010) (alleging "fail[ure] to disclose the lowering of Ambac's underwriting standards"); *In re MBIA, Inc. Sec. Litig.*, 700 F. Supp. 2d 566, 571 (S.D.N.Y. 2010) (alleging "three categories of material misstatements and omissions," none about risk management); *Lapin* v. *Goldman Sachs Grp., Inc.*, 506 F. Supp. 2d 221, 240 (S.D.N.Y. 2006) (alleging "pervasive conflicts and the effect they had on its research reports and buy recommendations").

cannot give rise to liability under §§ 11 & 12(a)(2) unless 'both objectively false and disbelieved by the defendant at the time [they were] expressed.'" (Opening Br. at 21-22 (citation omitted).) Plaintiffs ignore this argument because they implicitly concede that the SCAC never alleges Defendants believed that the risk management procedures described were *not* effective.

**B.      The SCAC Does Not Adequately Plead Any Actionable Failure to Itemize Sub-Categories of Barclays' Mortgage-Related Assets.**

Defendants' Opening Brief (at 22-24) demonstrated that, as the Second Circuit found, Barclays' public disclosures prior to the April 2008 Series 5 Offering corrected any alleged failure adequately to itemize mortgage-related assets, by providing a breakdown of the sub-categories of mortgage-related assets and exposures, including "its exposures to various types of CDOs backed by residential MBSs, including high-grade and mezzanine CDOs, as well as its exposure to monoline insurers." *Freidus*, 734 F.3d at 139.  In response, plaintiffs contend that "Barclays did not disclose its:  (1) £21.5 billion notional exposure to assets wrapped by monoline insurers; and (2) more than £10 billion exposure to leveraged loans, at the time of the Series 5 Offering." (Opp. at 12-13.)  This, however, merely challenges the disclosed *dollar amounts* of these exposures—*i.e.*, the subjective valuation opinions on which plaintiffs were granted leave to replead—rather than claiming that these sub-categories of mortgage-related assets were not disclosed at all.

In any event, to the extent that plaintiffs *are* challenging the adequacy of Barclays' disclosure of the sub-categories of its mortgage-related assets, that claim fails as a matter of law.  The Series 5 Offering Documents more than satisfied Barclays' disclosure requirements by providing granular detail on the various sub-categories of Barclays' mortgage-related assets, which far exceeded the disclosures that the Second Circuit held sufficient in *RBS* and *Hunt*.  (Opening Br. at 22-24 & n.16.)  Plaintiffs do not even try to distinguish either of these

decisions, and instead cite cases that are entirely unhelpful to their itemization claim.[6]

**C.**     **The SCAC Does Not Adequately Plead Any Actionable Misstatement Based on Alleged Non-Compliance with Accounting Standards or SEC Regulations.**

The SCAC fails to adequately allege that Barclays did not comply with various accounting standards and SEC regulations because it fails to specify "in any cognizable respect whatever how [Barclays'] . . . accounting practices were improper." (Dismissal Order at 17-18.) Plaintiffs do not contend that they pled an accounting violation with the requisite specificity, but instead erroneously assert that "this Court already recognized the intrinsic connection between the valuation and accounting standards compliance misstatements when it held that 'Lead Plaintiffs' allegations with respect to these accounting and reporting violations are inextricably intertwined with their . . . arguments regarding Barclays' valuations of its assets.'"[7] (Opp. at 12.)[8] The SCAC's allegations of accounting violations in the Series 5 Offering Documents are wholly conclusory—even more so than with respect to Series 2, 3 and 4 (*compare* SCAC ¶¶ 86, 115, 123, *with* SCAC ¶ 135)—and are thus insufficient to plead any actionable misstatement.

---

[6]     In *In re General Electric Co. Securities Litigation*, 857 F. Supp. 2d 367, 386-87 (S.D.N.Y. 2012), defendants "had no independent duty to 'break out' details concerning its subprime exposure," but instead plaintiff "plausibly allege[d] that these disclosures suggest that GE's loan portfolio was not as high quality as billed." Plaintiffs' other two cases are the same cases that this Court already found to be "distinguishable because they involve allegations that the defendants' itemized disclosures contained misleading statements." (Dismissal Order at 17 (citing *In re Citigroup. Inc. Bond Litig.*, 723 F. Supp. 2d 568, 589-90 (S.D.N.Y. 2010); *In re MBIA, Inc.*, 700 F. Supp. 2d at 579-80).)

[7]     In reality, the Dismissal Order (at 17-18) held that, not only did plaintiffs not specify "in any cognizable respect whatever how [Barclays'] . . . accounting practices were improper," but plaintiffs' claim alleging non-compliance with accounting standards or SEC regulations was also deficient because the underlying valuation of assets was not misstated. That holding, of course, does not mean that the converse is true, and that plaintiffs need not allege an accounting violation with the requisite specificity if they sufficiently alleged a misstatement with respect to Barclays' opinion statements about asset valuation.

[8]     Plaintiffs assert that "allegations of accounting violations raise specialized issues of fact that cannot be resolved on motion to dismiss" (Opp. at 12 n.13), but they cite cases that do not support that assertion, and instead involved highly specific allegations of accounting fraud. *See*, *e.g.*, *In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 656 (S.D.N.Y. 2007) (allegations that financial "statements failed to disclose significant related-party transactions and that Refco was a guarantor of those transactions").

## IV. THE NEW NAMED PLAINTIFFS LACK SECTION 12(a)(2) STANDING.

Plaintiffs dispute that they were required to allege that named plaintiffs "purchased securities directly from the defendants," *Freidus*, 734 F.3d at 141 (citation omitted), and instead contend that their allegation "that plaintiffs bought their securities *in* defendants' public offering" is all that is required to have standing under Section 12(a)(2). (Opp. at 15-16 (emphasis in original).)[9] Plaintiffs are wrong, and their concession that they pled only one of the two requirements necessary to have statutory standing under Section 12 requires dismissal of their Section 12(a)(2) claim. *See In re UBS AG*, 2012 WL 4471265, at *25-27 (plaintiff's failure to "allege[] that it purchased its shares from any of the Underwriter Defendants[] or that any of them specifically and successfully solicited its purchase" requires dismissal of Section 12(a)(2) claim) (quotation omitted); *In re CitiGroup*, 723 F. Supp. 2d 568 at 585 (same).[10]

## CONCLUSION

For the foregoing reasons and those set forth in Defendants' Opening Brief, the Court should dismiss the SCAC in its entirety with prejudice, except that Fait and Askelson (if they are appointed Lead Plaintiffs) may be given leave to replead a Section 11 claim concerning opinions about valuations of mortgage-related assets in the Series 5 Offering Documents.

---

[9] Plaintiffs try to hide behind the Second Circuit's statement that "[w]e believe that Lead Plaintiffs' proposed amendments addressed the other concerns identified by the district court," but ignore that the Second Circuit relied on the fact that "Plaintiff's counsel represented to the district court at oral argument that the securities were indeed purchased directly from the defendants." *Freidus*, 734 F.3d at 141. The actual SCAC that was filed after remand does not so allege and therefore fails to substantiate plaintiffs' counsel's representation.

[10] Plaintiffs rely on only one case, in which plaintiffs *did* allege purchases directly from a defendant. *In re MF Global Holdings Ltd Sec. Litig.*, 2013 WL 5996426, at *36 (S.D.N.Y. Nov. 12, 2013) (complaint "does allege, more particularly, that Plaintiffs purchased certain securities directly from certain underwriters"). And, to the extent that *MF Global* suggested in *dicta* that alleging a purchase *from* a defendant "is *not* required at the pleading stage," that is contrary to settled law in this Circuit (including *Freidus*, 734 F.3d at 141). *See In re UBS AG*, 2012 WL 4471265, at *27 (distinguishing case on which *In re MF Global* relies, in that "the complaint in *Wachovia* contained allegations regarding the transfer of title to plaintiffs and detail regarding the underwriters' participation in each offering at issue").

Dated: New York, New York
      January 13, 2014

                                  Respectfully submitted,

/s/  Jay B. Kasner                         /s/  David H. Braff
Jay B. Kasner (*jay.kasner@skadden.com*)     David H. Braff (*braffd@sullcrom.com*)
Scott D. Musoff (*scott.musoff@skadden.com*)   Michael T. Tomaino, Jr. (*tomainom@sullcrom.com*)
Gary J. Hacker (*gary.hacker@skadden.com*)   M. David Possick (*possickmd@sullcrom.com*)
SKADDEN, ARPS, SLATE,                  SULLIVAN & CROMWELL LLP
MEAGHER & FLOM LLP               125 Broad Street
Four Times Square                    New York, New York  10004
New York, New York  10036        (212) 558-4000 (Telephone)
(212) 735-3000 (Telephone)        (212) 558-3588 (Fax)
(212) 735-2000 (Fax)

*Attorneys for the Underwriter Defendants*     *Attorneys for the Barclays Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that, on January 13, 2014, a true and correct copy of the Reply

Memorandum in Further Support of Defendants' Motion to Dismiss the Second Consolidated

Amended Complaint was filed via the Court's CM/ECF system, which will send notification of

such filing to all counsel of record.


                                    ___/s/ M. David Possick___
                                         M. David Possick