USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11-17-15

**KESSLERTOPAZ**
**MELTZERCHECK** LLP
ATTORNEYS AT LAW

Writer's Direct Dial: 484-270-1465
E-Mail: snirmul@ktmc.com
11/17/2015  *Please reply to the Radnor Office*

November 4, 2015

*[Handwritten note by Judge:] The Court will treat this request as an application for the issuance of a letter requesting judicial assistance. The request is denied as untimely and it smacks of last minute gamesmanship in light of the 11/17 discovery cut off. So ordered.*

*Paul A. Crotty*

The Honorable Paul A. Crotty
United States District Court
Southern District of New York
500 Pearl Street, Chambers 1350
New York, NY 10007

Re: *In re Barclays Bank Plc Sec. Litig.*, No. 1:09-cv-01989-PAC

Dear Judge Crotty:

We write on behalf of Plaintiffs pursuant to FED. R. CIV. P. 28 and Rules 3.A and 3.C of Your Honor's Individual Practices to request a pre-motion conference or leave to file a motion for the issuance of a letter requesting judicial assistance pursuant to the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters. Plaintiffs seek to depose Drew Haigh ("Haigh") from PricewaterhouseCoopers LLC ("PwC"), Barclays' outside auditor, who Plaintiffs recently confirmed was a primary PwC contact regarding comfort letters and related work PwC delivered in connection with the Series 5 preferred stock offering at issue. Haigh resides in the United Kingdom, is outside of the jurisdiction of this Court and will not be available for trial. His relevance to the litigation is summarized below.

PwC audited and certified Barclays' fiscal year 2007 ("FY07") financial results through reports dated March 7 and 10, 2008 (as to Barclays PLC and Barclays Bank PLC, respectively) (the "2007 Audit Reports"), which were incorporated into Barclays' annual report on Form 20-F (the "2007 20-F"). The 2007 20-F was incorporated into the Series 5 Offering materials, as were the 2007 Audit Reports, and the Underwriter Defendants purportedly relied on the 2007 20-F in performing due diligence for the Series 5 Offering. Ex. 1 (Citi Tr.) at 99:9-22, 100:12-101:7. The Underwriter Defendants also purportedly relied on "Comfort Letters" that PwC issued on

280 King of Prussia Road, Radnor, Pennsylvania 19087  T. 610-667-7706  F. 610-667-7056  info@ktmc.com
One Sansome Street, Suite 1850, San Francisco, California 94104  T. 415-400-3000  F. 415-400-3001  info@ktmc.com
WWW.KTMC.COM



April 8 and 11, 2008 regarding Barclays' financial results for the periods January 1 – February 29, 2008, January 1 – April 4, 2008, and January 1 – April 8, 2008 (the "Series 5 Comfort Letters")—interim periods between Barclays' last reported financial statements and the Series 5 Offering. *See id.* at 272:17-22; Exs. 2-5. The Series 5 Comfort Letters were addressed to Barclays and the Underwriter Defendants, and were not available to Plaintiffs and other investors. *See id.*

Haigh was a Manager and Group Audit Director for Barclays at PwC and the point-person at PwC for communications with the Underwriter Defendants and their counsel regarding the Series 5 Offering. *See* Exs. 6-9; Ex. 10 (Harding Rough Tr.) at 30-31. Haigh has substantive knowledge of: (i) Barclays' FY07 financial results reported in the 2007 20-F; (ii) PwC's audit and preparation of the 2007 Audit Reports regarding the same; (iii) the scope of work PwC performed with respect to the Series 5 Offering and the Series 5 Comfort Letters, including the documents and financial schedules reviewed; (iv) the basis for statements made by PwC in the Series 5 Comfort Letters; and/or (v) the Underwriter Defendants' due diligence in connection with the Series 5 Offering. *See id.*

For example, in an April 8, 2008 email Haigh states, "Barclays and the Manager group [the Underwriter Defendants] need to consider whether the information provided in the private comfort letter needs to be disclosed in the Prospectuses appending the Registration Statement." *See* Exs. 7-8. The information to which Haigh refers is the statement in the Series 5 Comfort Letters that Barclays' Profit Before Tax "decreased" from January 1–February 29, 2008 and January 1–April 1, 2008, compared to those periods in the prior year. Haigh also stated that PwC had a "lengthy debate" regarding "circle up" work it performed on Barclays' sub-prime and Alt-A exposures and writedowns, as reported in the 2007 20-F, and which led to PwC's providing

The Hon. Paul A. Crotty
November 4, 2015
Page 3

**KESSLER** **CHECK**
ATTORNEYS AT LAW

comfort for these disclosures. *See* Exs. 2-5, 7-8.

Additionally, on April 22, 2008—just days after PwC issued the Series 5 Comfort Letters—Sophie Shi, also of PwC, e-mailed David Ludwick ("Ludwick"), a solicitor at Linklaters LLP, counsel to the Underwriter Defendants, stating that PwC was "not going to give comfort" on certain financial disclosures in the 2007 20-F, in connection with a comfort letter it was asked to provide for an offering under Barclays' Tier 2 capital Debt Issuance Program. *See* Ex. 11. In explaining to Barclays why PwC refused to give comfort, Ludwick stated that PwC had "in effect" said that "it was a mistake to circle them in Rimu [the Series 5 Offering]." *Id.* The circumstances leading to PwC and its employees making these statements, and the work performed by PwC regarding the same, are directly relevant to the claims and defenses at issue.

In view of PwC's assessment of Barclays' financial disclosures for the Series 5 offering, and Haigh's knowledge attendant thereto, Haigh's testimony is directly relevant to the central issues for trial, meriting the requested discovery and the filing of Plaintiffs' motion. Pursuant to Your Honor's Individual Practices, Plaintiffs conferred with Defendants regarding this relief and Defendants have stated that they object to the motion as untimely. This objection is without merit as Defendants did not identify PwC or Haigh in their Initial Disclosures, the need for Haigh's testimony only became clear during discovery, including depositions as recent as last week, Plaintiffs promptly retained and began working with U.K. counsel to prepare a highly detailed request for English courts, and fact discovery remains open.

Respectfully submitted,

Sharan Nirmul

cc: All Counsel of Record