UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  6 - 9 -16
```

-------------------------------------------------------X
                                        :
                                        :
                                        :          09 Civ. 1989 (PAC)
In re BARCLAYS BANK PLC                 :
SECURITIES LITIGATION                   :          **OPINION & ORDER**
                                        :
                                        :
-------------------------------------------------------X

HONORABLE PAUL A. CROTTY, United States District Judge:

Dennis Askelson—the lone remaining lead plaintiff in this protracted litigation—moves

pursuant to Fed. R. Civ. P. 23 to certify a class of all purchasers in the April 8, 2008 public

offering of Series 5 American Depositary Shares ("ADS") by Barclays Bank Plc ("Barclays"), to

pursue classwide claims of alleged material misrepresentations in the offering materials, in

violation of §§ 11 and 15 of the Securities Act.  Defendants[1] object on grounds that (i) Askelson

lacks Article III standing; (ii) Askelson is not an adequate class representative; and (iii) if

certified, the class period should end no later than August 7, 2008.

The Court holds (i) Askelson has Article III standing; (ii) the Rule 23 requirements

(including adequacy) are satisfied; and (iii) narrowing the class period at this time is not

appropriate.  The Court grants the motion for class certification, appoints Askelson as class

representative, and appoints Kessler Topaz and Robbins Geller as co-class counsel.

---

[1] Defendants include Barclays Defendants and Underwriter Defendants.  The Barclays Defendants are: Barclays, Barclays PLC, Marcus Agius, David G. Booth, Sir Richard Broadbent, Richard Leigh Clifford, Fulvio Conti, Daniel Cronje, Dame Sandra J.N. Dawson, Robert Edward Diamond, Jr., Gary A. Hoffman, Sir Andrew Likierman, Dr. Christopher Lucas, Sir Nigel Rudd, Stephen George Russell, Frederik Seegers, John Michael Sunderland and John Silvester Varley.  The Underwriter Defendants are: Banc of America Securities LLC, Barclays Capital Securities Limited, Citigroup Global Markets Inc., Merrill Lynch, Pierce, Fenner & Smith Incorporated, Morgan Stanley & Co., Incorporated, RBC Dain Rauscher Inc., UBS Securities LLC and Wachovia Capital Markets, LLC (n/k/a Wells Fargo Securities, LLC).  Dkt. 142 at 1, n.1.

## BACKGROUND

A brief summary of this action's history will be helpful in understanding the present motion. At commencement, the action involved four Barclays ADS offerings: the Series 2 offering of April 21, 2006; the Series 3 offering of September 10, 2007; the Series 4 offering of November 30, 2007; and the Series 5 offering of April 8, 2008. *Freidus v. Barclays Bank PLC*, 734 F.3d 132, 135 (2d Cir. 2013). Barclays sold about 218 million shares at $25 per share, yielding proceeds of $5.45 billion. *Id.* The shares' value declined significantly in subsequent years and, in March 2009, shares from all four offerings were trading at less than $7. *Id.* at 136.

In early 2009, purchasers from the four offerings filed several class action complaints alleging Defendants made material misrepresentations in the offering materials that, when later disclosed, resulted in the decline in the shares' value, in violation of Sections 11, 12(a)(2) and 15 of the Securities Act. *Id.* at 136-37. One such suit, brought by Beverly Pellegrini on April 8, 2009, dealt with the Series 5 offering. *Pellegrini v. Barclays Bank Plc*, 09 cv 3608. In December 2009, the Court consolidated the cases (including the *Pellegrini* case) and appointed Marshall Freidus, Stewart Thompson and Dora Mahboubi as lead plaintiffs. Dkt. 27 ¶ 3.

On February 12, 2010, the lead plaintiffs filed a Consolidated Amended Complaint ("CAC"). Dkt. 36. The CAC includes named plaintiff Martin Ettin, who allegedly acquired Series 5 shares "issued pursuant or traceable to" the April 8, 2008 offering. *Id.* ¶ 21. The CAC alleges that the offering materials contained materially false and misleading statements because Barclays (i) failed to timely and adequately disclose and write down its exposure to risky credit market assets (*id.* ¶¶ 6, 12); (ii) failed to comply with applicable accounting standards and SEC requirements (*id.* ¶¶ 132-51); and (iii) misleadingly assured investors that Barclays' extensive risk management practices helped it avoid such credit market risks (*id.* ¶ 11). The CAC further

2

alleges that "Barclays would not begin to make adequate disclosures of its capital credit market exposures until [the August 7, 2008 release of] its 2008 Interim results, . . . and certain vital disclosures were not made until the annual report as of December 31, 2008." *Id.* ¶ 184; *see also* Dkt. 43, Ex. R.

On January 5, 2011, the Court granted Defendants' motion to dismiss the CAC. 2011 WL 31548. First, the Court held that lead plaintiffs lacked standing to bring Section 12(a)(2) claims because the CAC does not allege that they purchased the relevant shares directly from Defendants. *Id.* at *5. Second, the Court held that claims regarding the Series 2, 3 and 4 offerings were untimely. *Id.* at *6-7. Third, the Court held that the CAC fails to adequately plead Securities Act violations because the allegedly omitted credit market-related exposures were not actually required to be disclosed, and the allegedly insufficient write downs of Barclays' assets were based on subjective determinations and were therefore not actionable absent plausible allegations that Defendants disbelieved the subjective valuations at the time they made them. *Id.* at *6-10. Finally, the Court held that Martin Ettin, the only Series 5 named plaintiff, did not have adequately pleaded claims since he purchased his shares after August 7, 2008, when Barclays released its 2008 Interim results and allegedly "[began] to make adequate disclosures of its capital credit market exposures." *Id.* at *10 (quoting CAC ¶ 184).

On February 4, 2011, lead plaintiffs moved for reconsideration and leave to amend as to the Series 5 allegations. Dkt. 57. They attached a proposed Second Consolidated Amended Complaint ("SCAC") which, they argued, remedied the CAC's deficiencies as to standing and allegations of Defendants' subjective beliefs about their valuation statements at the time they made them. Dkt. 58 at 5-6. The proposed SCAC adds two new plaintiffs—Dennis Askelson and Alfred Fait—who purchased Series 5 ADS after April 8, 2008 but before the August 7, 2008

3

disclosures. *Id.* at 6. The proposed SCAC also omits the CAC's allegation that the 2008 Interim results began to make "adequate" disclosures as to Barclays' capital market exposures; it instead alleges that the 2008 Interim results began to make "certain" disclosures as to Barclay's capital market exposures. *Id.* Ex. 1 ¶ 195; *see also* Dkt. 63 ¶ 195. On May 31, 2011, the Court held that the proposed SCAC fails to state a claim, and so denied the motion for leave to amend as futile. 2011 WL 2150477, at \*2-3.

On August 19, 2013, the Second Circuit affirmed in part and reversed in part. *Freidus*, 734 F.3d at 135. The court agreed that the Series 2, 3, and 4 claims were time-barred. *Id.* at 138-39. But the Second Circuit held that it was error to deny leave to amend as to the Series 5 offering. *Id.* at 139-40. First, the court held that, based on a supervening Second Circuit decision, the proposed SCAC adequately pleads claims for disbelief of subjective opinions as to the Series 5 offering and such claims need not be brought as fraud claims. *Id.* at 141. Second, the court determined that the proposed SCAC remedies the Section 12(a)(2) standing defect by alleging that lead plaintiffs purchased the securities directly from defendants. *Id.* Finally, the court noted that the proposed SCAC "put[s] forth a set of new Lead Plaintiffs to bring the Series 5 Offering claims, in response to the district court's ruling that Martin Ettin was not a viable lead plaintiff as he purchased his shares after the alleged omissions and misstatements were revealed." *Id.* at 141-42. Those new lead plaintiffs "remedied" the "inadequacy of the Series 5 Offering lead plaintiff." *Id.* at 141. The court remanded "to give the Lead Plaintiffs the opportunity, with respect to the Series 5 Offering, to proceed with the claims in the Proposed Complaint and with a new Lead Plaintiff." *Id.* at 142.

Upon remand, lead plaintiffs Freidus, Mahboubi, Thompson, Askelson and Fait filed the SCAC on September 16, 2013. Dkt. 66. The SCAC is identical to the proposed version except

4

for an added footnote that describes the Second Circuit's order. *See id.* ¶ 1 n.1. As such, the

SCAC contains the Series 2, 3, and 4 claims of Freidus, Mahboubi and Thompson and the

amended Series 5 claims of Askelson and Fait, but it acknowledges "that the Second Circuit

affirmed the Court's order dismissing plaintiffs' claims for the Series 2, 3 and 4 Offerings, and

plaintiffs are no longer pursing [sic] claims regarding those three offerings." *Id.*

On November 4, 2013, Defendants moved to dismiss the SCAC. Dkt. 72. They argued

(i) the SCAC violates the mandate rule because it includes Series 2, 3 and 4 claims even though

the Second Circuit affirmed their dismissal; (ii) the amended Series 5 allegations still fail to

adequately plead Section 11 or 12(a)(2) violations; and (iii) the SCAC still does not adequately

allege Askelson's and Fait's Section 12(a)(2) standing. Dkt. 73.

On June 2, 2014, the Court denied the motion to dismiss. 2014 U.S. Dist. LEXIS 76161.

First, the Court reasoned that since the Second Circuit "approved of the proposed complaint in its

entirety," plaintiffs complied with the Second Circuit's mandate by filing an amended complaint

that was nearly identical to the proposed version. *Id.* at *8. Second, the Court read the Second

Circuit's decision as holding "that all of Plaintiffs' Series 5 allegations . . . state a claim for

relief," and explained that it is bound by that holding. *Id.* at *7. Third, again relying on the

Second Circuit's decision, the Court held that Askelson and Fait were "adequate lead plaintiffs"

to pursue the Series 5 claims. *Id.* at *8. On July 6, 2014, the Court issued an order appointing

Askelson and Fait as lead plaintiffs and removing Freidus, Thompson and Mahboubi. Dkt. 91.

In May 2015, lead plaintiffs notified the Court that Fait was in failing health and might

have to withdraw as a lead plaintiff; he died in November 2015. Dkt. 108, 139. Prior to Fait's

death, he and Askelson moved to add Paul Spindel, another Series 5 purchaser, as an additional

lead plaintiff. Dkt. 115. Defendants opposed the motion primarily on grounds that Spindel's

claims were barred by the Securities Act's three-year repose period. Dkt. 119.

On November 19, 2015, the Court denied the motion. 2015 U.S. Dist. LEXIS 156676. As an initial matter, the Court determined that, absent other bars, lead plaintiffs could use Fed R. Civ. P. 15(c) to add Spindel as an additional named plaintiff and relate back his claims for timeliness purposes. *Id.* at *8-10. But the Court held that the statutory repose period—which cannot be tolled—bars application of Rule 15(c). *Id.* at *10-12 (citing *Police & Fire Ret. Sys. of the City of Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95, 108-09 (2d Cir. 2013)). As such, the Court held that adding Spindel as an additional lead plaintiff would be futile. *Id.* at *13.

## ASKELSON'S PENDING MOTION

Askelson now moves for class certification to pursue the Section 11 and 15 claims; he has indicated that he intends to voluntarily dismiss the Section 12(a)(2) claim. Dkt. 142 at 1. He proposes the following class definition: "All persons or entities who purchased or otherwise acquired American Depository Shares, Series 5, representing non-cumulative callable dollar preference shares of Barclays Bank Plc, Series 5, pursuant or traceable to the public offering that commenced on or about April 8, 2008." Dkt. 141, Ex. 1 ¶ 1.

Askelson bought 2,400 Series 5 shares on April 9, 2008 for $25 per share. Dkt. 149, Ex. 5 at 8. The share price began to drop precipitously in late 2008, ultimately bottoming out at $4.95 on March 9, 2009, and then rapidly ascended. *Id.* Ex. 8. On April 8, 2009 (when Pellegrini filed the initial Series 5 action), Series 5 shares closed at $12.82. *Id.* On February 4, 2011 (when lead plaintiffs filed the proposed SCAC and added Askelson), Series 5 shares closed at $25.91. *Id.* On September 16, 2013 (when Askelson and Fait filed the SCAC), Series 5 shares closed at $25.27. *Id.* He still owns all but one share that his broker sold without his authorization. Dkt. 149, Ex. 1 at 312-13.

6

On September 15, 2015, Askelson testified at his deposition that his role as lead plaintiff was:

> Number one, to make sure – to review and make sure that the class counsel is adequate and are doing their proper job to the best of their abilities. Number two is to review all the pleadings. Number three, to review all the filings to make sure that they're in – cognizant with what is best for the class, and have conversation with class counsel if I need. Next would be to participate in the discovery. And next would be to appear for deposition and be active with the file, or if it goes to trial, to represent myself at the trial.

*Id.* at 267. To that end, Askelson testified that he (i) read the complaint and understood that it alleges false and misleading information in Barclays filings, (ii) read the Court's prior opinion, (iii) understood that he was injured because he bought the shares for $25 and a year later they were worth $4.96, and (iv) met with counsel over 50 times in the last four years. *Id.* at 23, 146, 167, 232-33, 249-50, 277-78, 283.

Askelson, however, could not articulate what misstatements Barclays allegedly made, and testified that (i) he was not concerned at the time of his purchase in April 2008 about possible write downs of Barclays' assets, (ii) his injury was "hypothetical" in the sense that he only lost the opportunity in 2009 to sell his shares at their original value, (iii) he was "happy with" the investment as of today, and (iv) he believed that he was not suing Barclays personally, but rather as a class member. *Id.* at 191-93, 208-09, 257-58.

## DISCUSSION

### I.    Legal Standards

A party seeking class certification "must establish that the four threshold requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—are satisfied and demonstrate through evidentiary proof that the class satisfies at least one of the three provisions for certification found in Rule 23(b)." *In re U.S. Foodservice, Inc. Pricing Litig.*, 729

7

F.3d 108, 117 (2d Cir. 2013) (internal quotation marks omitted). Askelson invokes Rule 23(b)(3), under which he must establish: "(1) predominance—'that the questions of law or fact common to class members predominate over any questions affecting only individual members'; and (2) superiority—'that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Id.* (quoting Fed. R. Civ. P. 23(b)(3)). A putative class plaintiff must prove that his proposed class satisfies each Rule 23 requirement by at least a preponderance of the evidence. *Id.*

Article III of the Constitution limits federal court jurisdiction to "Cases" and "Controversies." The standing doctrine, which sets apart those "Cases" and "Controversies" that are justiciable, has three necessary elements. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id.* at 1548 (internal quotation marks omitted). "That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong." *Id.* at 1547 n.6 (internal quotation marks omitted). "[O]nce standing is established for a named plaintiff, standing is established for the entire class." *Kendall v. Emp. Ret. Plan of Avon Prod.*, 561 F.3d 112, 118 (2d Cir. 2009).

**II.  Analysis**

As to the Rule 23(a) requirements, Defendants do not contest numerosity, commonality,

8

or typicality. The Court holds that those requirements are met.[2]  Nor do Defendants challenge

the Rule 23(b) requirements, which the Court also holds are satisfied.[3]  Defendants also do not

dispute the adequacy of Kessler Topaz and Robbins Geller; the Court holds that they are

qualified to serve as class counsel. Fed. R. Civ. P. 23(g).

     Defendants object to certification for three reasons. First, Askelson, the only remaining

lead plaintiff, lacks Article III standing. Second, Askelson would not be an adequate class

representative. Third, if a class is certified, the class period should end on August 7, 2008.

### A.   Article III Standing

     Section 11 damages are calculated according to a statutory formula. Where, as here, the

plaintiff still holds his shares, damages are measured as "the difference between the amount paid

for the security . . . and [] the value thereof as of the time such suit was brought." 15 U.S.C. §

77(k)(e)(1).  Askelson contends that he is entitled to damages equal to the difference between

what he paid for the Series 5 shares ($25) and what the shares were trading for when Pellegrini

brought the first Series 5 on April 8, 2009 ($12.82). Dkt. 152 at 1. He argues that his right to

those damages establishes his Article III standing. *Id.* at 3-4.

     Before addressing standing, the Court must determine the proper date for "the time such

suit was brought." There are three choices: (i) when Pellegrini brought Series 5 claims on April

8, 2009; (ii) when lead plaintiffs sought to add Askelson on February 4, 2011; or (iii) when

---

[2] Numerosity is established because Barclays sold millions of Series 5 shares to hundreds or thousands of investors. Commonality is established because each and all of the members of the proposed class were allegedly damaged by the same alleged misrepresentations and omissions in the offering documents. Askelson's claims are typical of the absent class members' claims since they arise out of the same alleged course of events and alleged misrepresentations and omissions.

[3] Common questions of law and fact as to Defendants' liability predominate over any individual issues and any damages would be calculated using a common statutory formula set forth in the Securities Act. 15 U.S.C. § 77k(e). And as will be seen, a class action is superior to other litigation methods.

Askelson filed the SCAC on September 16, 2013. The answer is critical here because the shares were trading below the purchase price in April 2009, but above the purchase price by February 2011 and September 2013. Dkt. 149, Ex. 8. The Securities Act does not define the term, but several courts have ruled on this question. The majority of cases hold that the proper date is that of the first-filed complaint, rather than of a later-filed amended or consolidated complaint. *See Alpern v. Utilicorp United, Inc.*, 84 F.3d 1525, 1541-44 (8th Cir. 1996); *In re Brooks Automation, Inc. Sec. Litig.*, 2007 WL 4754051, at *5-6 (D. Mass. Nov. 6, 2007); *Beecher v. Able*, 435 F. Supp. 397, 402 (S.D.N.Y. 1977); *but see Merzin v. Provident Fin. Grp. Inc.*, 311 F. Supp. 2d 674, 686 (S.D. Ohio 2004).

  *Brooks Automation* is most analogous. In that case, Charles Leech filed a putative shareholder class action alleging Section 11 violations (among others) on June 19, 2006. 2007 WL 4754051, at *3. The court consolidated his case with another substantially identical action and appointed the Los Angeles County Employees Retirement Association ("LACERA") as lead plaintiff. *Id.* On May 10, 2007, LACERA moved to amend the complaint to add a new named plaintiff, the Sacramento County Employee Retirement System ("SCERS"), to address concerns that LACERA lacked standing to assert the Securities Act claims. *Id.* The court held that "the time such suit was brought" for SCERS's Securities Act claims was June 19, 2006 because, pursuant to Fed. R. Civ. P. 15(c)(3), SCERS's claims related back to the filing of Leech's complaint. *Id.* at *5-6. The Court so held because all of Rule 15(c)(3)'s conditions were met: SCERS's claims arose from the same events alleged by Leech, there was sufficient identity of interest between Leech and SCERS because both were members of the putative class, and defendants were not unduly prejudiced because they were on notice of the Securities Act allegations from the outset. *Id.*

The same logic controls here. Askelson's claims arise from the same events originally alleged by Pellegrini, both are members of the putative class, and defendants have been on notice of the claims from the outset. Indeed, the Court already weighed the Rule 15(c)(3) factors earlier in this case and held that for timeliness purposes a new lead plaintiff's claims relate back to the filing of the initial complaint. 2015 U.S. Dist. LEXIS 156676, at *8-10; *see also Beach v. Citigroup Alt. Inv. LLC*, 2014 WL 904650, at *19-20 (S.D.N.Y. Mar. 7, 2014). Nothing warrants a different conclusion for damages purposes. Application of a later date would also lead to an anomalous result: Askelson would be entitled to damages, if he had remained an absent class member, but would forfeit those damages by stepping forward to represent the class, even though nothing changed regarding the relevant class allegations. Additionally, locking in the applicable damages at the filing of the first complaint promotes the statutory scheme by holding defendants liable for material misrepresentations regardless of post-filing changes in price. *See FHFA v. Nomura Holding Am., Inc.*, 68 F. Supp. 3d 486, 491 (S.D.N.Y. 2014) ("Post-filing changes to the security's value are irrelevant [in a Section 11 claim]. Just as defendants are not liable for subsequent decreases, defendants cannot benefit from any subsequent increases in value.").

Defendants argue that even if Askelson's damages are calculated from the filing of the initial complaint, he still lacks Article III standing. They contend that for standing purposes the Court must look at the state of affairs on February 4, 2011, the day Askelson asked to join the case and, since the shares were trading above $25 on that day, Askelson has no injury in fact. Dkt. 148 at 11-15. Not so. While Askelson's standing is indeed assessed as of February 4, 2011, he had a claim *on that day* for Section 11 damages measured as the difference between the price he paid for the shares ($25) and the price when the first complaint alleging Series 5 claims was filed ($12.82). Askelson's claim to those damages satisfies injury in fact and establishes his

11

Article III standing.

Defendants also are wrong that using Askelson's Section 11 statutory damages to establish injury in fact impermissibly "abrogate[s] the Art. III minima." *Id.* at 14 (quoting *Gladstone, Realtors v. Vill. Of Bellwood*, 441 U.S. 91, 100 (1979). "[I]t has long been recognized that a legally protected interest may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute." *Donoghue v. Bulldog Inv'rs Gen. P'ship*, 696 F.3d 170, 175 (2d Cir. 2012) (internal quotation marks omitted); *see also Spokeo*, 136 S. Ct. at 1553 (Thomas, J., concurring) ("Congress can create new private rights and authorize private plaintiffs to sue based simply on the violation of those private rights. A plaintiff seeking to vindicate a statutorily created private right need not allege actual harm beyond the invasion of that private right.") (internal citation omitted). Askelson seeks to vindicate his private right to Section 11 damages based on *his* purchase of Series 5 shares and the alleged diminution in value of *his* shares. That satisfies the Article III minima; Askelson has standing.[4]

### B.   Adequacy

Next, Defendants argue that Askelson is an inadequate class representative. A class representative must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). "In addition, courts also consider whether a putative representative is familiar with the action,

---

[4] Defendants also argue that Askelson lacks standing because he testified that, since he did not actually sell the shares at their depreciated value, he sustained a "hypothetical" injury. Dkt. 148 at 15-16. Askelson also testified that he was injured because he bought his shares for $25 per share and a year later, when the initial Series 5 suit was brought, their value was substantially diminished. Dkt. 149, Ex. 1 at 166-67. For the reasons stated, that is a cognizable Article III injury.

whether he has abdicated control of the litigation to class counsel, and whether he is of sufficient moral character to represent a class." *Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168, 176 (S.D.N.Y. 2008) (internal quotation marks and brackets omitted).

Defendants posit three theories of inadequacy. First, Askelson is said to be subject to a unique materiality defense, putting him in conflict with absent class members. He testified that "the possibility of write-downs wasn't important to [him] as an investor" and that he is presently "happy with his investment" as evidence that any misstatements or omissions were immaterial to his investment decisions. Dkt. 148 at 18-19. But that testimony fails to raise a defense unique to Askelson that puts him in conflict with the class. Materiality is judged according to an objective standard; a fact is material if there is a substantial likelihood that a reasonable person would consider it important in deciding whether to buy or sell shares. *See TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976). Since the materiality inquiry is objective, "the class is entirely cohesive: It will prevail or fail in unison. In no event will the individual circumstances of particular class members bear on the inquiry." *Amgen Inc. v. Conn. Ret. Plans and Tr. Funds*, 133 S. Ct. 1184, 1191 (2013). Thus, Askelson's testimony—even if probative to the materiality inquiry—does not create a conflict that would render him an inadequate representative.

Second, Askelson is said to be inadequate because of his apparent confusion as to the theory of the case and whether he is suing in his individual capacity. Dkt. 148 at 21-22. Askelson's testimony, however, demonstrates that he has reviewed the filings, has sufficient familiarity with the facts and legal theories underlying the case, has been in regular contact with his lawyers over the last four years, and understands his role in making decisions on behalf of the class. *Lapin*, 254 F.R.D. at 177. That is sufficient to establish his adequacy. Given the complex nature of the case, Askelson is "not required to have expert knowledge of all the details of the

13

case . . . and a great deal of reliance on expert counsel is to be expected." *N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*, 2011 WL 3874821, at *4 (S.D.N.Y. Aug. 16, 2011).

Third, Askelson is said to be an inadequate representative because he will voluntarily dismiss the Section 12(a)(2) claims. Dkt. 148 at 22-23. The Court disagrees. As lead plaintiff, Askelson is permitted to make tactical decisions to pursue some claims and not others. *In re Bank of Am. Corp. Sec., Deriv., and ERISA Litig.*, 2011 WL 4538428, at *1 (S.D.N.Y. Sept. 29, 2011). And Defendants offer no explanation as to why the decision to diligently pursue only the Section 11 and 15 claims leaves absent class members worse off. Surely, Defendants' proposed remedy—denying certification and depriving Askelson of the opportunity to pursue any claims on behalf of the class—would leave the proposed class far worse, given the bar on tolling the Securities Act repose period after dismissal of a putative class action. *See IndyMac*, 721 F.3d at 109. Askelson is an adequate class representative.

### C.   Class Period

Finally, Defendants contend that the class period should end on August 7, 2008. They argue that it is law of the case that any misrepresentations or omissions were cured by Barclays' release of its 2008 Interim results on August 7, 2008. "Under the law-of-the-case doctrine, where a case has been decided by an appellate court and remanded, the court to which it is remanded must proceed in accordance with the mandate and such law of the case as was established by the appellate court." *Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co.*, 762 F.3d 165, 175 (2d Cir. 2014).

Contrary to Defendants' position, neither this Court nor the Second Circuit has ever found that the 2008 Interim results released on August 7, 2008 cured any or all alleged misrepresentations or omissions. Rather, the Court ruled on a motion to dismiss that the

14

*allegation* in the CAC that Barclays began to make "adequate" disclosures on August 7, 2008 rendered the CAC insufficiently *pleaded* as to post-August 7, 2008 purchasers. 2011 WL 31548, at *10 (citing CAC ¶ 184). The SCAC remedies that deficiency by alleging that the 2008 Interim results contained "certain" (rather than "adequate") disclosures. *Compare* CAC ¶ 184 *with* SCAC ¶ 195. Given the different wording, the complaint can no longer be read to allege that the 2008 Interim results disclosure contained sufficient information to cure prior misrepresentations.[5] Rather, the time when the alleged misrepresentations were sufficiently revealed is a question of fact that is not appropriate for resolution on a motion for class certification. *Freeland v. Iridium World Commc'ns, Ltd.*, 233 F.R.D. 40, 43-44 (D.D.C. 2006). Thus, it would be improper to limit the class period to August 7, 2008 as Defendants request.

## CONCLUSION

The Court grants the motion for class certification, appoints Dennis Askelson to represent the class, and appoints Kessler Topaz and Robbins Geller as co-class counsel. Along with the issuance of this Opinion & Order, the Court will endorse the proposed order (Dkt. 141, Ex. 1). The parties are directed to appear at a status conference on July 27, 2016 at 11:15 am. The Clerk is directed to terminate the motion at Docket 141.

Dated: New York, New York  
      June 9, 2016

SO ORDERED

PAUL A. CROTTY  
United States District Judge

---

[5] Webster's Third New International Dictionary defines "adequate" as "fully sufficient for a specified or implied requirement" or "legally sufficient." In contrast, Webster's Third defines "certain" (as used in this context) as "of a character difficult or unwise to specify—used to distinguish a . . . thing not otherwise distinguished or not distinguishable in more precise terms."